## COUNTY OF CALLAWAY v. FOSTER.

1. The powers of a railroad company, in Missouri, in existence prior to the adoption of the constitutional provision of 1865, prohibiting subscriptions to the stock of any corporation by counties, cities, or towns, unless two-thirds of the qualified electors thereof shall assent, are not affected by such provision, but remain the same as if it had never been adopted.
2. The power conferred by the statute of Missouri of March 10, 1859, upon a county in which may be any part of the route of the Louisiana and Missouri River Railroad Company, to subscribe to the capital stock of that company without submitting the question of such subscription to the vote of the people, was not taken away by the amendatory act of March 24, 1868.
3. Every reasonable construction of the language of the act of March 10, 1859, embraces the county of Callaway, and the road has been actually located through it.
4. The subscription to the stock of the railroad company, having been actually made by that county, under the authority of a legislative act, in January, 1868, was legal, and the circumstance that the bonds were issued at a later date does not impair their validity.

ERROR to the Circuit Court of the United States for the Western District of Missouri.

A copy of the bonds and coupons in question, and a full statement of the statutory provisions governing the case and of the facts shown in the record, are set forth in the opinion of the court.

Argued by *Mr. William M. Evarts* for the plaintiff in error, and by *Mr. J. D. Stevenson* for the defendant in error.

MR. JUSTICE HUNT delivered the opinion of the court.

This is one of the bond cases of which so many have been brought before this court within the last few years. The county

of Callaway, in the State of Missouri, subscribed to the stock of a railroad to be built through the county, and issued its bonds to raise the money to make payment therefor. The road has been built, is in full operation upon the route selected by the county, and the county holds its stock.

The county court making the subscription paid the interest for two years upon the bonds, and a portion of the principal. Another county court has since been elected, which refuses to pay either principal or interest.

The plaintiff below, a citizen of the State of Kentucky, paid his money for a portion of these bonds, and brings the present suit to recover the amount. The court adjudged that the bonds must be paid. The county appeals to this court.

The bonds were issued under the act of the general assembly of Missouri, entitled "An Act to incorporate the Louisiana and Missouri River Railroad Company, approved March 10, 1859" (see Acts Mo. 1858, p. 406), as amended by an act approved March 24, 1868 (Acts Mo. 1868, p. 97).

Sect. 29 provided that "it shall be lawful for the county court of any county in which any part of the route of said railroad may be to subscribe to the stock of said company, and issue bonds of such county to raise funds to pay the stock thus subscribed."

Sect. 22 of the amendatory act of March 24, 1868, is as follows: "It shall be lawful for the company to mark out, locate, and construct a branch of its road. . . . And all subscriptions to the capital stock of said company intended to be used in the construction of said branch shall be made in separate books."

On the 16th of January, 1868, the county court of Callaway County authorized a subscription of $500,000 to the capital stock of the said railroad company.

The record shows that on the same day, — to wit, on the sixteenth day of January, 1868, — Harris, the authorized agent, subscribed for the stock, and received the certificates therefor.

The following is a copy of one of the bonds issued by the county, with coupon attached, to raise the money to pay such subscription, and which is now held by the plaintiff below: —

"No.——.]            `STATE OF MISSOURI.           [$100.

### "CALLAWAY COUNTY RAILROAD BOND.

"On the first day of January, A.D. 1873, the county of Callaway promises to pay to the Louisiana and Missouri River Railroad Company, or bearer, the sum of $100, to bear interest from date, at the rate of nine per cent per annum, payable semi-annually on the first day of January and July in each year, as per coupons attached hereto, and after maturity to bear the same rate of interest until paid, said principal sum and interest being payable at the Missouri Bond and Stock Board of St. Louis, in the City of St. Louis, Mo. This bond is issued by Callaway County, by authority of the act of the general assembly of the State of Missouri, approved March 10, 1859, as amended by an act approved March 24, 1868.

"Witness my hand, with the seal of said county affixed, this first day of January, 1869.

"[L. S.]                      GEO. BARTLEY,
                    "*Presiding Justice of Callaway County Court.*
"Attest : W. H. BAILEY,
        "*Clerk of Callaway County Court.*

### "COUPON.

"On the first day of January, 1873, Callaway County will pay to the bearer the sum of $4.50 at the Missouri Bond and Stock Board of St. Louis, Mo., interest on Railroad Bond No.——.
                        "GEO. BARTLEY,
                "*Presiding Justice of Callaway County Court.*
                    ."W. H. BAILEY,
                "*Clerk of Callaway County Court.*"

If this subscription was made by virtue of the act of March 10, 1859, before referred to, it is not contended that the bonds are invalid. This is understood to be conceded in the second point made in the brief of the plaintiff in error.

On the other hand, if the subscription depends solely for its validity upon the act of March 24, 1868, it is contended that the subscription was without the authority of law, and that the bonds issued in its fulfilment are void.

The distinction is this : On the 8th of March, 1859, a county might legally be empowered by the legislature of Missouri to make a subscription to railroad stock upon its own motion, and to issue bonds in fulfilment of the obligation. Before the 24th of March, 1868,—to wit, in July, 1865,—a constitutional

provision was adopted, in these words : " The general assembly shall not authorize any county, city, or town to become a stockholder in, or to loan its credit to, any company, association, or corporation, unless two-thirds of the qualified voters of such county, city, or town, at a regular or special election to be held therein, shall assent thereto.".

It is not pretended that the assent of the voters of Callaway County to the subscription in question was given.

The facts upon this branch of the case are, that the subscription to the railroad stock was authorized by the county court, and actually made by their agent before the act of March, 1868, was passed ; that the certificates of stock in said company were issued to and received by the county at the time of making such subscription, but that the bonds of the county in question were not issued until a date after the passage of the latter act, — to wit, in January, 1869, — and that the original charter was in several particulars altered by the amending act of 1868.

1. It has been held in many cases by the Supreme Court of Missouri, that the provision of the constitution of 1865, prohibiting loans or subscriptions for stock, except with the assent of the electors, is prospective, not retroactive ; that the charter of a company which is in existence before the adoption of the constitutional provision is not affected by it, but the powers given by it remain as if no such constitution existed. *State* v. *Macon County Court*, 41 Mo. 453 ; *Smith* v. *County*, 9 Clark, 54 id. 58. Although put into execution by making the subscription or issuing the bonds after the adoption of the constitution, the power remains valid.

2. The constitution of 1865 contains, in connection with the provision already quoted, the following : " All statute laws of the State now in force, not inconsistent with the constitution, shall continue in force until they shall expire by their own limitations, or be amended or repealed by the general assembly." In *State of Missouri* v. *Cape Girardeau & State Line Railroad*, 48 Mo. 468, it was held, that the constitutional provision prohibiting special enactments did not extend to amendments of laws in force when it was adopted, but that additional power given to the Cape Girardeau Railroad, by the means of

an amendment to its charter, was a lawful exercise of authority. The cases before cited show that the act we are considering is not inconsistent with the constitution, as it continued in force after its adoption as before.

It is difficult to discover any principle which can distinguish an amendment to the charter of the Louisiana and Missouri River Railroad Company, altering its terms and conditions within its original limits, and of the general nature and scope of its original charter, from the Cape Girardeau case. The case of *State* v. *Saline Co.*, 51 Mo. 350, does not conflict with this principle.

3. The act of March, 1868, referred to in the Callaway County bonds, in connection with the act of March 10, 1859, was an amendment of the latter act.

It expressly declares itself to be an amendment of the first act. Its title is, " An Act to amend an act entitled an act to incorporate the Louisiana and Missouri Railroad Company, by increasing the amount of the capital stock of the said company, defining more explicitly the power of the board of directors to fix the western terminus of said road, authorizing the location and construction of a branch road, and conferring upon said board the necessary powers to carry into effect the several objects contemplated by their charter, and also by striking out sects. 11, 18, 30, and 31 of said act." Laws of Mo. 1868, p. 103.

That the title may properly be examined, and is competent, see *Cin. L. I. C.* v. *Abbott*, 39 Mo. 181; *State* v. *Saline Co.*, 51 id. 392; 14 id. 205.

The several objects appear to be legitimate subjects of amendment, and it would ill become us to impute to the legislature of a State an intention to evade the provisions of its own constitution, under the guise of an amendment. There is no indication of such an intention in the case we are considering.

The form in which the amendment is made, by a new act throughout, is explained by that article of the Missouri Constitution which requires that no amendment of an act can be made by striking out and inserting any words, but that " the act or part of act amended shall be set forth and published at length as if it were an original act." Accordingly, the amend-

ment is here made, not by making provision merely for the new points, but by re-enacting the whole of the original act in all its details, with the alterations, where they are intended to be made.' A collation of the provisions of the two acts make this point quite clear.

The amended-charter attaches to itself all the qualities and privileges of the old one. *State* v. *Greene Co.*, 54 Mo. 540; *State* v. *Callaway Co.*, 51 id. 395; *State* v. *Sullivan Co.*, id. 522.

This view is an answer to the objections that the transfer of the subscription was made to a branch road, and an issue of bonds made under that subscription, and that such authority only existed under the power conferred by the act of 1868. The branch was the original road, so far as Callaway was concerned, with a change of name simply, and the amendment became a part of the original act.

We find no difficulty, therefore, in holding that a county, included in the terms of the original act, had power upon its own authority to subscribe for the stock, and that a submission of the question to the electors of the county was not necessary.

The power of this county to subscribe as one of the counties intended to be included within the terms of the original act is reasonably plain.

The twenty-ninth and thirty-fifth sections are as follows : —

"SECT. 29. It shall be lawful for the county court of any county in which any part of the route of said railroad may be, to subscribe to the stock of said company; and it may invest its funds in stock of said company, and issue the bonds of such county to raise funds to pay the stock thus subscribed, and to take proper steps to protect the interest and credit of the county. Such county court may appoint an agent to represent the county, vote for it, and receive its dividends; and any city, town, or incorporated company may subscribe to the stock of said railroad company, and appoint an agent to represent its interest, give its vote, and receive its dividends, and may take proper steps to guard and protect the interest of said city, town, or incorporation."

"SECT. 35. Said company shall have power to mark out, locate, and construct a railroad from the city of Louisiana, in the county of Pike, by the way of Bowling Green, in said county, to some suitable point on the North Missouri Railroad, intersecting said road between the southern limits of the town of Wellsburg, in Montgom-

ery County, and the northern limits of the town of Mexico, in Audrain County, thence to the Missouri River at the most eligible point, on a line the most suitable and advantageous as regards distance, grade, cost of road, and permanent value of same."

The starting-point of the road was fixed at Louisiana, in the county of Pike. Two points only in the route were indicated; to wit, Bowling Green, and the crossing of the Missouri Railroad between the outer limits of the towns of Wellsburg and Mexico. The termination was to be upon the Missouri River at the most eligible point, distance, grade, cost of road, and permanent value considered. The county of Callaway furnished all the requisites thus set forth. The road as ultimately built did pass through Bowling Green, across the Missouri road between the towns of Mexico and Wellsburg, thence through the whole length of the county of Callaway to a point opposite Jefferson City on the Missouri River. We discover nothing to show that this point might not properly have been decided by the company to have been a more suitable and advantageous place at which to terminate its road than any other upon the Missouri River.

The statute already quoted provides that " it shall be lawful for the county court of any county, in which any part of the route of said railroad may be, to subscribe to the stock of said company." " May be " what ? This expression is incomplete, and is to be construed with reference to the situation of the subject-matter. If used in a statute where a railroad already built was the subject, it would no doubt refer to the presence or existence there of the road. It would be equivalent to the word " exists," or " is built," or " in operation," or the like. But when used in reference to a railroad not yet built, not located or surveyed, and indeed not yet organized, it must have quite a different meaning. Certain points were given for the location of the road; as, that it must start from a city named, it must pass through one place mentioned, and must pass between two others, and must terminate on the Missouri River. The map given in evidence shows that there was a large room for choice thus left in the company. It might pass through Howard and Boone Counties, terminating at Glasgow, and omitting Callaway, or it might pass through Callaway, termi-

nating opposite Jefferson City, omitting Howard and Boone. This was the intention of the legislature; for the double purpose, no doubt, of enabling the company to select the best route, and of stimulating rivalry among the different localities which might wish to obtain the benefit of the location. A broad construction of the language would be to say that it meant to authorize a subscription by any county in which the road may by law be located. This would include all the counties before named. It might be held to authorize a subscription by any county in which the road may be in fact ultimately located.

It is, perhaps, not necessary to pass upon this point with any more precision than to say, that, upon any reasonable construction of the language, it embraces Callaway, which was one of the possible sites, and a site ultimately occupied, in fact.

We are of the opinion, therefore, that the subscription actually made by the county of Callaway, in January, 1868, was legal, and that the circumstance that the bonds were issued at a later date is an immaterial one.

We are of the opinion, also, that the amendments of the charter, and the subsequent action by which the portion of road from Mexico through Callaway County, and under such amendments was made a branch road, and the portion from Mexico to Glasgow was called the main road, and that the bonds were issued both under the act of 1859 and the act of 1868, if such were the fact, do not affect the case. The latter act is an amendment and continuation of the former, and refers to what was then termed a branch road.

Nor do we perceive that it is necessary to invoke the principle of *bona fides.*

If our views are sound, the bonds were legally issued under the authority of a legislative act, and are valid in the hands of any one who has a legal title to them.

We are of the opinion that the case was well decided by the Circuit Court.                 *Judgment affirmed.*

MR. JUSTICE MILLER, with whom concurred MR. JUSTICE DAVIS, MR. JUSTICE FIELD, and MR. JUSTICE BRADLEY, dissenting.

I dissent from the judgment of the court, on the ground that

the subscription of stock to the railroad company in this case could only be made under the amendatory act of March 24, 1868, and that the constitution of the State then required a vote of the county to make such subscription valid. As there was no such vote, and no recital in the bond or elsewhere to show that there was, the bonds were void.