## COUNTY OF SCOTLAND *v.* THOMAS.

1. The fourteenth section of article 11 of the Constitution of Missouri, adopted in 1865, which declares that "the general assembly shall not authorize any county, city, or town to become a stockholder in, or to loan its credit to, any company, association, or corporation, unless two-thirds of the qualified voters of such county, city, or town, at a regular or special election to be held therein, shall assent thereto," prohibits any subsequent legislative grants to any municipal corporation, of authority to become a stockholder in, or to loan its credit to, a company, except upon the prescribed conditions; but it does not purport to take away any authority already granted.

2. The Alexandria and Bloomfield Railroad Company was incorporated under an act of the general assembly of Missouri, approved Feb. 9, 1857, which provided that "it shall be lawful for the county court of any county, in which any part of said road may be, to subscribe to the stock of said company," and issue its bonds therefor. The laws of the State reserved to the general assembly the right to amend the charter, and the company was, pursuant to the authority conferred by the act of March 2, 1869, consolidated with a corporation in Iowa, having like authority from that State; but the general direction of the road was not thereby changed. The road of the company passes through the county of Scotland; and the county court, in the absence of any election by the qualified electors of that county, subscribed, in August, 1870, to the capital stock of said consolidated company, and issued the bonds of the county in payment therefor. *Held,* 1. That the power of the county to subscribe for stock in the Alexandria and Bloomfield Railroad Company was the right and privilege of the company, and passed, with its other rights and privileges, into the new conditions of existence which it assumed under the consolidation. 2. That the subscription made by the court was the act of the county, and binding upon it, and that the bonds so issued are valid.

3. *Harshman* v. *Bates County*, 92 U. S. 569, is not in conflict with the rulings in this case.

ERROR to the Circuit Court of the United States for the Eastern District of Missouri.

This was a suit brought upon certain coupons attached to bonds, purporting to have been issued by the county of Scotland, in the State of Missouri.

The bonds were in the words and figures following, except that each bond had a separate number: —

"$1,000.]          UNITED STATES OF AMERICA.          [No. 65.

"*Eight-per-cent Railroad Bond.*

"County of Scotland.]          [Twenty-five years.

"Know all men by these presents, that the county of Scotland, in the State of Missouri, acknowledges itself indebted to the Missouri,

Iowa, and Nebraska Railway Company, a corporation existing under and by virtue of the laws of the States of Missouri and Iowa, formed by consolidation of the Alexandria and Nebraska City Railroad Company (formerly Alexandria and Bloomfield Railroad Company) of the State of Missouri, and the Iowa Southern Railway Company of the State of Iowa, in the sum of $1,000, which sum the said county hereby promises to pay to the said Missouri, Iowa, and Nebraska Railway Company, or bearer, at the Farmers' Loan and Trust Company in New York, on the thirty-first day of December, A.D. 1895, together with interest thereon from the thirty-first day of December, 1870, at the rate of eight per cent per annum, · which interest shall be payable annually, in the city of New York, on the thirty-first day of December in each year, as the same shall become due, on the presentation of the coupons hereto annexed. This bond being issued under and pursuant to an order of the county court of said Scotland County, for subscription to the stock of the Missouri, Iowa, and Nebraska Railway Company, as authorized by an act of the general assembly of the State of Missouri, entitled "An Act to incorporate the Alexandria and Bloomfield Railroad Company," approved Feb. 9, 1857.

"In testimony whereof, the said county of Scotland has executed this bond by the presiding justice of the county court of said county, under the order of said court, signing his name hereto, and the clerk of said court, under the order thereof, attesting the same, and affixing thereto the seal of said court. This done at the town of Memphis, in the county of Scotland, in the State of Missouri, this first day of September, A.D. 1870.

"WILLIAM DAWSON,
"*Presiding Justice of the County Court of Scotland County, Mo.*

"Attest:

{ SCOTLAND COUNTY COURT, }  "STERLING McDONOLD,
{    MISSOURI, SEAL.    }  "*Clerk of the County Court of Scotland County, Mo.*"

To each of which bonds were annexed twenty-five interest coupons, each for the sum of $80, maturing annually for the interest thereon. · These bonds were delivered, before the 21st of December, 1871, to the "Missouri, Iowa, and Nebraska Railway Company," with the interest coupons attached, in payment of the subscription to the capital stock of the company; and such of them as had attached to them the coupons sued·on were, before the maturity of the second maturing coupons, together with all the coupons except the ones first maturing,

sold for value, and transferred by delivery to the plaintiff, who is the holder and owner thereof. The plaintiff caused the coupons sued on to be presented for payment at maturity, and payment was not made.

The petition alleged, in addition to the foregoing facts, that by an act of the general assembly of Missouri, entitled "An Act to incorporate the Alexandria and Bloomfield Railroad Company," approved Feb. 9, 1857, the said company was incorporated, and thereafter was duly organized under said act of incorporation; that the tenth section of said act of incorporation provides as follows: —

"The said company shall in all things be subject to the same restrictions, and entitled to all the privileges, rights, and immunities which were granted to the North Missouri Railroad Company, by an act entitled 'An Act to incorporate the North Missouri Railroad Company,' approved March 3, 1851, so far as the same are applicable to the company hereby created, as fully and completely as if the same were herein re-enacted."

The fourteenth section of the said act of March 3, 1851, contains the following provision, to wit: —

"It shall be lawful for the county court of any county, in which any part of the route of said railroad may be, to subscribe to the stock of said company (North Missouri Railroad Company), and it may invest its funds in the stock of said company, and issue the bonds of such county to raise funds to pay the stock thus subscribed, and to take proper steps to protect the interest and credit of the county."

That a part of the route of the road of the "Alexandria and Bloomfield Railroad Company" was within the county of Scotland, as designated in the act of incorporation.

That in pursuance of an act of the general assembly of Missouri, entitled "An Act to amend an act entitled 'An Act to incorporate the Alexandria and Bloomfield Railroad Company, approved Feb. 9, 1857,' approved Feb. 19, 1866," authorizing the Alexandria and Bloomfield Railroad Company to change its name, and to extend its road from Luray, in Clark County, Mo., to Nebraska City, in Nebraska Territory, the said company did change its corporate name to that of the "Alexandria and Nebraska City Railroad Company."

The defendant demurred; but, before the demurrer was submitted, it was stipulated between the parties that the question of subscribing to the stock of the "Missouri, Iowa, and Nebraska Railway Company" had never been submitted to a vote of the qualified voters of Scotland County; and that, in determining the questions raised by the demurrer, the court might consider this fact as if it had been averred in the complaint.

It was further agreed that the articles of consolidation between the Iowa Southern Railway Company and the Alexandria and Nebraska City Railroad Company, entered into March 26, 1870, and the orders of the county court of Scotland County, should be taken and considered by the court, as facts admitted in determining the questions raised by the demurrer.

By those articles, it was provided that the consolidated company should bear the name of the Missouri, Iowa, and Nebraska Railway Company; that its capital stock should be $13,000,000, to be divided into one hundred and thirty thousand shares of $100 each; that the directors might increase it when necessary, upon the approval of a majority of the stockholders; that the line of the railway should extend from the city of Alexandria, in Missouri, on the Mississippi River, to Centreville, Iowa, thence west to the Missouri River; and that the company should assume and pay all debts owing, and all contracts or agreements entered into, by either of the companies. The company was also authorized to borrow money to an amount not exceeding two-thirds of its capital stock, issue bonds, and secure their payment by mortgage on all the property of both companies.

The material parts of the act of March 2, 1869, under which the "Alexandria and Nebraska City Railroad Company," and the "Iowa Southern Railway Company," a corporation created under the laws of Iowa, entered into articles of consolidation are as follows : —

"SECTION 1. That any railroad company organized under the general or special laws of this State, whose track shall, at the line of the State, connect with the track of the railroad of any company organized under the general or special laws of any adjoining State, is hereby authorized to make and enter into any agreement with

such connecting company, for the consolidation of the stock of the respective companies whose tracks shall be so connected, making one company of the two, whose stock shall be so consolidated, upon such terms and conditions and stipulations as may be mutually agreed between them, in accordance with the laws of the adjoining State in which the road is located with which connection is thus formed."

Sect. 2 requires that the consolidation shall be approved by the holders of a majority of the stock in each of the old companies.

Sect. 3 provides, that when the terms of consolidation shall have been agreed upon, &c., "it shall be competent for the boards of directors in each of said connecting companies to carry the same into effect, and adopt by a resolution a new corporate name for the company, which shall be formed by the consolidation; and to call in the certificates of stock then outstanding in each company, and exchange them for stock in the new company, as may have been agreed by the terms of the consolidation; and a copy of the said consolidation agreement, and the resolutions of consolidation, and the name adopted for the new company, shall be filed with the secretary of State," &c.

"SECT. 4. Any such consolidated company shall be subject to all the liabilities and bound by all the obligations of the company within this State which may be thus consolidated with one in the adjacent State, as fully as if such consolidation had not taken place; and shall be subject to the same duties and obligations to the State, and be entitled to the same franchises and privileges under the laws of this State, as if the consolidation had not taken place."

The demurrer was overruled, and judgment rendered for the plaintiff; whereupon the county sued out this writ of error.

*Mr. George W. McCrary* and *Mr. J. O. Broadhead* for the plaintiff in error.

1. The plaintiff below is not an innocent purchaser of the bonds sued on, without notice.

(*a.*) Because the defect complained of is a want of power, and not an irregular exercise of an admitted power.

(*b.*) Because the act under which the right to issue the

bonds in suit is claimed is set out in the bonds themselves, and the purchaser was put upon inquiry, and had notice of all the facts.

2. The validity of the bonds can only be sustained by showing that the county was authorized by the law as it stood prior to July, 1865, when the constitutional prohibition took effect, to subscribe to the stock of the Alexandria and Bloomfield Railroad Company, and to the stock of any company that might be formed by consolidation with it.

3. Whatever might be claimed if the old company, by its charter or the law in force prior to that date, had been vested with the power to consolidate, it is clear that, in the absence of that power, the right of the county thereafter to subscribe was a right to subscribe to the original corporation, and no other.  *Harshman* v. *Bates County*, 92 U. S. 569.

4. If the intent of the act of 1869 was, as claimed, to authorize a new company to be formed by consolidation of the Alexandria and Nebraska City Railroad Company, and the Iowa Southern Railway Company, and to empower Scotland County to subscribe, without a vote of the people, to the stock of this new company, then that act is so far unconstitutional and void.

5. The consolidation effected by changing the Alexandria and Bloomfield Railroad Company into the Alexandria and Nebraska City Railroad Company, and consolidating the latter with the Iowa Southern Railway Company, by which was formed the Missouri, Iowa, and Nebraska Railway Company, was a fundamental alteration of the charter of the first-named company, not provided for or contemplated by either the charter itself or the general laws of the State, as they stood when the Constitution of 1865 was adopted.

*Mr. A. J. Baker* and *Mr. F. T. Hughes, contra.*

MR. JUSTICE BRADLEY delivered the opinion of the court.

This action was brought by plaintiff below (the defendant in error) to recover the amount of certain interest coupons attached to certain bonds issued by order of the county court of Scotland County, Mo. (the defendant below), on behalf of the county, to pay for a subscription of stock to the Missouri, Iowa,

and Nebraska Railway Company. The county contests the validity of the bonds, on the ground that the question of subscribing to the stock was never submitted to a vote of the qualified voters of the county, as required by the Constitution of the State adopted in 1865, the subscription being voted and the bonds being issued in 1870. The plaintiff answers this objection by showing that the power to make the subscription was conferred in 1857, in the charter of a company called the Alexandria and Bloomfield Railroad Company, before the Constitution was adopted, and that this company, by consolidation with other companies, formed the Missouri, Iowa, and Nebraska Railway Company, and brought to it all its own privileges and powers, — and, amongst others, that of receiving county subscriptions to its capital stock. The county replies to this argument, that however valid it may be to sustain subscriptions made to the Alexandria and Bloomfield Railroad Company itself, had that company remained distinct, as originally chartered, it cannot avail to support a subscription to the stock of a new and different company, having a much greater amount of capital stock, and a much longer and different route of railroad, running into another State. The question was raised in the court below by demurrer to the petition, and judgment was given for the plaintiff.

The clause of the Constitution on which the defendant relies is the fourteenth section of art. 11, and is as follows: " The general assembly shall not authorize any county, city, or town to become a stockholder in, or to loan its credit to, any company, association, or corporation, unless two-thirds of the qualified voters of such county, city, or town, at a regular or special election to be held therein, shall assent thereto." This prohibition, it will be observed, is against the legislature's authorizing municipal subscriptions or aid to private corporations: it does not purport to take away any authority already granted. It only limits the power of the legislature in granting such authority for the time to come. This has been settled by the Supreme Court of Missouri in several well-considered decisions. See *The State* v. *Sullivan County*, 51 Mo. 522; *The State* v. *Greene County*, 54 id. 540. In the former case, the court say: " Power conferred on counties to take and subscribe stock

without a submission to a vote of the people, before the Con stitution went into operation, remained unaffected by that instrument." The same view was taken by this court in the recent case of *County of Callaway* v. *Foster*, 93 U. S. 567. See also *State* v. *Maysville & Lexington Railroad Co.*, 13 B. Mon. (Ky.) 1.

The specific question in the present case, therefore, is, whether the authority given to counties and towns in 1857 to subscribe to the capital stock of the Alexandria and Bloomfield Railroad Company has become extinguished by the subsequent consolidation of that company with other companies, irrespective of the constitutional provision referred to. The Constitution does not itself, as we have seen, interfere with authority given previous to its adoption.

That simple consolidation with another company does not extinguish the power of the counties to subscribe, or the privilege of the company to receive subscriptions, was decided in the case of *The State* v. *Greene County*, 54 Mo. 540. In that case, the Kansas City, Galveston, and Lake Superior Railroad Company was chartered in 1857, with power to construct a branch road from Kansas City to the southern boundary of the State; and power was given to the county courts of any county through which the road or any of its branches might run, to subscribe to the stock of the company, and issue its bonds therefor. The company afterwards changed its name, and, in 1870, consolidated with the Hannibal and St. Joseph Railroad Company; and the latter company continued the work of constructing the branch road referred to, which had been begun by the Kansas City company. The branch was built under a separate organization created by the parent company, called the Kansas City and Memphis Railroad Company, but under the control and with the aid of the parent company. The county court of Greene County, in 1870, subscribed to the capital stock of the Hannibal and St. Joseph Railroad Company, issued to aid in building and equipping the branch road, which ran through the county. The Supreme Court of Missouri decided that the subscription was valid, and that the power to subscribe, originally given, still subsisted, unaffected by the consolidation. The cases decided by this court of *The*

*Philadelphia & Wilmington Railroad Co.* v. *Maryland,* 10 How. 376, and *Tomlinson* v. *Branch,* 15 Wall. 460, were cited and relied on, for the purpose of showing that where a consolidation is effected between two railroad companies, and nothing to the contrary is indicated, the rights and privileges, as well as the duties and liabilities, of each continue to exist as before in the hands of the new organization. It seems to us that this decision in the Greene County case governs the present case. It is true the court laid considerable stress on the fact that the branch road in that case was a distinct interest from that of the main line, and was not liable for its obligations or liabilities, and the holders of the stock in the branch road had the right to control its affairs; and this feature was not changed by the consolidation. This fact, undoubtedly, prevents the case from being an exact precedent for the present one. But the close and intimate relations which in other respects connected the branch with the main line in that case give to the decision a good deal of importance. The principles adopted were substantially the same as those involved in the present case. The facts are not very fully stated in the report; but it would appear from the statement of the dissenting judge, p. 557, that the stock subscribed for in that case was the stock of the Hannibal and St. Joseph Railroad Company. As such, though it may have been special stock applicable to the branch road, it made the holder a member of the parent company, entitled to vote for its directors, and no doubt in other ways connected with its fortunes.

In that case, as in this, the power to consolidate was given after the original charter was granted, and after the Constitution went into effect. But that was not regarded as affecting the power. By general laws of the State, in force when the original charter was granted, the legislature had reserved the power to alter, suspend, and repeal all charters of incorporation, and had specially reserved this power in the general railroad act. See Rev. Stat. of Mo., 1855, pp. 371, 438. It would seem clear, therefore, that alterations of the charter were admissible, and would not affect rights of the company untouched thereby, nor a power to subscribe to its stock previously existing. See *County of Callaway* v. *Foster,* 93 U. S. 567.

The power to amend thus existing, the amending acts in this case do not subvert the original purposes of the charter, but rather carry them out and perfect·them.    The railroad authorized by it was "a railroad from the city of Alexandria, in the county of Clark, in the direction of Bloomfield, in the State of Iowa, to such point on the northern boundary line of the State of Missouri as shall be agreed upon by said·company, and a company authorized on the part of the State of Iowa, to construct a railroad to intersect the road authorized to be constructed by the provisions of this act, at the most practicable point on said State line."    Bloomfield was a small town in Iowa, evidently not intended as the final objective point of the proposed line, which is only required to be "in the direction of Bloomfield."    A connection with a continuous road in Iowa was the declared object of the road proposed.    It was evidently the purpose to bring Alexandria, a port of Missouri on the Mississippi River, in connection with the rich region of southern and western Iowa, by means of the road then being chartered, and a road to connect therewith, running into the State of Iowa.    This purpose will be most effectually attained by the construction of the continuous line contemplated by the consolidated companies.    The general direction of the road is not changed.    It does not pass through Bloomfield, it is true; but it does not pass it by so far as to be a substantial departure from the route originally indicated.    The amending act, therefore, which authorized a consolidation with the Iowa Southern Railway Company, and thereby constituted the Missouri, Iowa, and Nebraska Railway Company, was in perfect accord with the general purpose of the original charter of the Alexandria and Bloomfield Railroad Company; and, if the other rights and privileges of the latter company passed over to the consolidated company, we do not see why the privilege in question should not do so, nor why the power given to·the county to subscribe to the stock should not continue in force.

The decision of this court in the case of *Harshman* v. *Bates County*, 92 U. S. 569, is urged against this view of the case; but we do not think it applicable.    In that case, the question was, whether authority given to the·county court by the electors of a township to subscribe in its ·behalf for stock in a certain

railroad company, continued to exist after the company had ceased to exist, by being absorbed in another company by consolidation? We held that it did not. The county court was regarded as being the mere agent of the township, having no discretion to act beyond the precise terms of the power given. The powers of an agent or attorney, authorized to act for another, are very different from those possessed by a person acting in his own behalf. Had the charter of the Alexandria and Bloomfield Railroad Company authorized foreign corporations to subscribe to its stock (supposing that by the general law of Missouri they had no such power), they would undoubtedly have retained that power after the consolidation; it being in their discretion to exercise it or not. But if any such foreign corporation had, before the consolidation, sent an order to a firm in St. Louis to subscribe stock for it in the original company, the firm could not have made the subscription after the consolidation, without consulting their principals. Such a material change of circumstances would have rendered the subscription an excess of the power given to them. Authority given to a person, to be exercised for his own benefit and at his own discretion, may be exercised by him under changes of circumstances that would amount to a revocation of a power given to an attorney, unless it expressly conferred discretion. A recurrence to the opinion in the Harshman case will show that this distinction underlies the reasons given for the judgment in that case. The county court of Scotland County, in the present case, acted as the representative authority of the county itself, officially invested with all the discretion necessary to be exercised under the change of circumstances brought about by the consolidation in question. For, as before remarked, the county courts, in reference to the subscription in question, represented the counties themselves, as their officially constituted authorities. This is distinctly stated by the Supreme Court of Missouri in the case of *The Hannibal & St. Jo. Railroad Co.* v. *Marion County*, 36 Mo. 303. The power given to the county courts intersected by the Alexandria and Bloomfield Railroad to subscribe to its stock, was given to them as representing the counties. When they subscribed for the stock, it was the county that subscribed. It was discretionary with them whether

to subscribe or not, and (within the limits imposed by the act) how much they should subscribe.

But the case has other aspects, which it is necessary to take into consideration. If we look at the subject in a broad and general view, it will be still more manifest that the power in question was intended to exist, notwithstanding the consolidation. The project of the railroad promised a great public improvement, conducive to the interests of Alexandria and the counties through which it would pass. Its construction, however, would greatly depend upon the local aid and encourage ment it might receive. The interests of its projectors and of the country it was to traverse were regarded as mutual. The power of the adjacent counties and towns to subscribe to its stock, as a means of securing its construction, was desired n only by the company, but by the inhabitants. Whether the policy was a wise one or not is not now the question. It was in accordance with the public sentiment of that period. The power was sought at the hands of the legislature, and was given. It was relied on by those who subscribed their private funds to the enterprise. It was involved in the general scheme as an integral part of it, and as much contributory and necessary to its success as the prospective right to take tolls. Why it should not still attach to this portion of the road, as one of the rights and privileges belonging to it, into whose hands soever it comes, by consolidation or otherwise, it is difficult to see. The principles laid down in the case of the *Philadelphia, Wilmington, & Baltimore Railroad Co.* v. *Maryland*, 10 How. 376, and *Tomlinson* v. *Branch*, 15 Wall. 460, and recently reaffirmed in *Branch* v. *City of Charleston*, 92 U. S. 677, seem to us directly applicable. Subscription to the stock was not only a power of the county, but a privilege of the company, — being a portion of the rights and privileges which it obtained by translation from the charter of the North Missouri Railroad Company. It was expressly so held by the Supreme Court of Missouri in the case of *Smith* v. *County of Clark*, 54 Mo. 58; and the same principle had been adopted in the earlier case of *The Hannibal & St. Jo. Railroad Co.* v. *Marion County*, 36 id. 294, 304. The latter company was by its charter " entitled to all the privileges, rights, and immunities which were granted to the Louis-

iana and Columbia Railroad Company, so far as applicable," &c. The right to receive county subscriptions was held to be one of these privileges, rights, and immunities.   The court said: —

"It was under this section that the [county] court proceeded when the stock was first taken and the notes issued.   The legislature gives the company all the rights, privileges, and immunities contained therein, the same as if it had been re-enacted.   The language seems broad enough, by reasonable construction, to fully sustain the acts of the county court."   36 id. 304.

In *Smith* v. *County of Clark*, the same views were held with regard to the charter now in question.   The court say: —

"The power thus conceded to the courts or other municipal bodies may well be termed a privilege to the corporations, and we see no substantial objection to a transfer of such a privilege by simply, in general terms, embodying the section of the original act which granted it into the new law.   That such was the intention of the legislature and of the railroad company is clear; and, if the word 'privilege' admits of the narrow construction claimed, the practical construction it has received in this State, as may be seen by reference to the decisions of our courts, would preclude any inquiry into the subject now.   These provisions were the principal means by which this and other roads were built, and without them the charters would have been of no value."   54 id. 67.

The power of the counties to subscribe being thus held to be a right and privilege of the company, in our opinion, passed with its other rights and privileges into the new conditions of existence which the company assumed under the consolidation.

The argument sought to be drawn from the distinction, that the company with which the consolidation was effected belonged to another State, we fail to appreciate.   If the legislature of Missouri authorized it, what difference can it make whether the connecting company belongs to Missouri or to Iowa ?   There is no difference in principle.   The Philadelphia, Wilmington, and Baltimore Railroad Company, in its consolidated form, combined the roads and charters of three different States; and yet it was held to be invested with the rights and privileges of each, as applicable to the several parts of the line. See also, to the same purport, the case of *Hanna* v. *The Cincinnati, Fort Wayne, & Chicago Railroad Co.*, 20 Ind. 30.

Other points were raised on the argument, which it is unnecessary to discuss, as this was the principal one relied on, and presented the only serious difficulty in the case.

*Judgment affirmed.*

MR. JUSTICE MILLER dissented.

MR. JUSTICE FIELD did not sit in this case, nor take any part in the decision.