SMITH (WYLIE v.). See Case No. 18.110.

SMITH (WYTHE v.). See Case No. 18,122.

## Case No. 13,131.

SMITH v. YATES.

[15 Blatchf. 89.] [1]

Circuit Court, N. D. New York. July 18, 1878.

COUNTIES—BONDS IN AID OF RAILROAD—ACT OF NEW YORK LEGISLATURE.

The act of the legislature of New York, passed April 19, 1869 (Laws N. Y. 1869, p. 447, c. 241), authorized any town in the county of Orleans, "situate along the route of the Lake Ontario Shore Railroad," after certain proceedings, to issue its bonds in aid of the building of the road. Such bonds were issued by the town of Y., in said county, although, at the time, the route of the road was not located through or along that town, in the manner prescribed by the general railroad act of April 2, 1850. (Laws N. Y. 1850, p. 211, c. 140), under which the railroad corporation was organized: *Held*, that the want of such location was no objection to the validity of the bonds.

[Cited in Mellen v. Lansing, 11 Fed. 828.]

[This was an action on certain bonds by Andrew J. Smith against the town of Yates.]

Charles T. Richardson and Albertus Perry, for plaintiff.

Irving M. Thompson and George F. Danforth, for defendant.

WALLACE, District Judge. The only open question in this case, under the decisions which are controlling on this court, is, whether or not the defendant was authorized by the act of April 19, 1869 (Laws N. Y. 1869, p. 447, c. 241), to lend its credit to the Lake Ontario Shore Railroad Company, towards the construction of the railroad. If it was so authorized, the plaintiff, who is a bona fide holder of the coupons in suit, can rely upon the recitals contained in the body of the bonds, and the defendant cannot be heard to set up that its officers disregarded the requirements of the statute in issuing the bonds. Miller v. Berlin [Case No. 9,562].

By the act in question, upon the application in writing of twelve or more freeholders, residents in any town in the county of Orleans, situate along the route of the Lake Ontario Shore Railroad, it is made the duty of the county judge wherein such town is situated, to appoint three or more commissioners for said town, and the commissioners, when thus appointed, are authorized to borrow money on the faith and credit of their respective towns, and issue bonds for that purpose. If the town of Yates was one of the towns thus authorized to lend its credit, the county judge properly appointed commissioners for the purposes of the act, and these commissioners became the agents of the town, and, having issued the bonds of the town, it is not material to inquire whether, in doing so, they observed

[1] [Reported by Hon. Samuel Blatchford, Circuit Judge, and here reprinted by permission.]

or disregarded the terms of their authority. If the town of Yates was authorized thus to lend its credit, it was because it was a town situate along the route of the Lake Ontario Shore Railroad, within the meaning of the act, and, therefore, one of a designated class of towns upon which authority was conferred; and here arises the point upon which the defence of this action rests. The plaintiff has not shown that, at the time the commissioners were appointed by the county judge, the route of the railroad was located through or along the town of Yates, in the manner prescribed by the general railroad act of 1850 (Laws N. Y. 1850, p. 211, c. 140), under which the Lake Ontario Shore Railroad was organized. Section 22 of that act requires every company formed under that act, before constructing any part of their road into or through any county named in their articles of association, to make a map and profile of the route intended to be adopted, certified by the president and engineer, or a majority of the directors, and filed in the office of the clerk of the county in which the road is to be made. Subsequent provisions of that section indicate the object of the requirement, which is in order that the public may know what location of the route is proposed, and that any person aggrieved may apply to a justice of the supreme court for the appointment of commissioners, who are authorized to alter the route. Section 23 of that act authorizes the directors, by a two-thirds vote of their whole number, to change the route, or any part of the route, of their road, upon filing a survey, map and certificate of such alteration; and provides that no such alteration shall be made in any city or village without the sanction of a vote of two-thirds of the common council or trustees, and awards compensation to all persons for any injury done to lands that may have been donated to the company, in case the route is altered after the company has commenced grading; and concludes, by applying all the provisions relative to the first location to the new or altered location.

The defendant insists, that, as there is no proof that the route of the road was located according to these provisions, there is nothing to show that the defendant was a town situate along the route of the road, within the meaning of the law, and, therefore, nothing to show that it was authorized to lend its credit to the road. The position must rest on the argument, that the words "situate along the route" of the road, as used in the act of 1869, mean situate along the route as located, pursuant to the terms of the general railroad act. The question then, is, what does the act mean when it authorizes any town situate along the route of the railroad to bond? The language is to be interpreted in the light of existing facts. If a railroad had already been built, it would, no doubt, refer to the actual route of the road; and, if that route differed from another indicated by a map and profile made and filed pursu-

ant to the general railroad act, no one would doubt that the legislature referred to the town upon the actual route. But, when the language is used in reference to a railroad not yet built, it refers to a town upon the contemplated route of the road. Callaway Co. v. Foster, 93 U. S. 567, 574. The statute, then, means to authorize any town which may be situated along the contemplated route of the railroad to lend its credit to the enterprise. It does not attempt to prescribe the evidence by which the route contemplated shall be made manifest; and a construction which, in effect, would define the evidence of the fact, would require an interpolation not warranted by the spirit of the legislation. The primary object of such legislation is to enable corporations to obtain the means to build projected roads by the aid of such municipalities as may be induced to co-operate, and proceeds upon the theory that this will be secured by stimulating rivalry among different localities which may be induced to compete for the benefits of the enterprise. Of necessity, it contemplates that competing municipalities will measurably control the selection of the route of the railroad. It is, therefore, not fairly to be implied that the legislature intended that the route should be definitely located before the municipalities should be in a position to co-operate in the enterprise. If it was the intent of the act that no town should take proceedings to secure the road until it had secured the location, that intent seems quite inconsistent with the general purpose of the legislation; and, if this was not the intent, it is hardly to be inferred that formal evidence was intended to be required of a non-essential condition. In my view of the act, if there had been nothing indicating that the route of the road was located, and no evidence that the defendant was a town situate along the route of the road, the plaintiff should recover, on the ground that it was the intent of the act to authorize any town upon the contemplated or proposed route of the road to lend its credit, and, in this behalf, to procure the appointment of commissioners to whose judgment the interests of the town were to be committed. The act provides that the commissioners shall not issue bonds until they have obtained the consent of a majority of the taxpayers of the town, and of persons owning more than one-half of the taxable property of the town; and it also provides that no portion of the bonds, or of the moneys arising therefrom, shall be paid, laid out or expended in any other town than that by which such bonds shall be issued, until at least ten thousand dollars per mile, upon an average, shall have been paid or expended upon the grading or construction of each mile of said road lying within such town, unless said road shall be graded and made ready for laying the rails thereon through such town at a less cost than ten thousand dollars per mile; but, by the terms

of the act, this provision is not to apply to any town through which the road shall not run. The commissioners are to be controlled by the wishes of the taxpayers of the town in issuing the bonds, and the railroad company is prohibited from using the moneys derived from the town until the town is substantially secured in the location of the road. Unless the taxpayers are satisfied that the town will derive the benefit of the location of the road, it is to be inferred they will not consent to the incurring of the debt. After it is incurred, the railroad company is required to observe good faith. It is repugnant to common sense to believe that legislation like the present contemplates that the municipalities are to be secured the benefits of the enterprise before they can be called on to assist in its promotion. An act that imposed such conditions would be an absurdity; and an act that made a paper location a prerequisite to the co-operation of the town, would seem to be more absurd, because it would not secure the location, while calculated to make it appear in fact secured.

In arriving at the conclusion reached, I have not lost sight of the rules which require a strict construction of statutes which impose a charge upon the property of the citizen without his consent, and which require proof of all jurisdictional facts before effect can be given to a judicial act taken in a special statutory proceeding. But, for the reasons stated in Munson v. Lyons [Case No. 9,935], these rules must be essentially modified in their application to acts like the one in question, designed to put upon the market, and invest with all the attributes of value, securities which will attract the investments of those who are ignorant of the history of the particular proceeding under which they are issued. If these rules were strictly applied, and it could be shown that one of the twelve freeholders, upon whose application the county judge appointed the commissioners, was not in fact a resident of the town, the whole proceeding would fail and the bonds be void; and, if every purchaser were bound, at his peril, to inquire and correctly ascertain if every freeholder who so applied was in fact a resident, there would be no sale for, and little, if any, value to the bonds. As was said by Mr. Justice Strong (Town of Venice v. Murdock, 92 U. S. 494, 497): "No sane person would have bought a bond with such an obligation resting upon him."

Judgment is ordered for the plaintiff.

---

SMITH, The ANNIE H. See Case No. 420.

SMITH, The L. P. See Case No. 13,191.

SMITH, The WILEY. See Case No. 17,657.

SMITHERS (UNITED STATES v.). See Case No. 16,347.

SMOCK (UNITED STATES v.). See Case No. 16,348.