## COUNTY OF RALLS *v.* DOUGLASS.

1. County bonds issued in Missouri by a *de facto* county court, which are sealed with the seal and signed by the *de facto* president thereof, cannot, when held by *bona fide* purchasers, be impeached by showing that he was not *de jure* a member of the court.

2. It is no defence to a suit on such bonds so held that the company, in payment of the county subscription to whose capital stock they were issued, was not organized within the period prescribed by law.

3. The validity of such bonds cannot be impeached upon the ground that after the Constitution of Missouri of 1865 took effect they, without a vote of the people authorizing it, were issued to pay for such a subscription, if the latter was made pursuant to the authority of the charter granted to the company in 1857.

4. Such bonds so issued are admissible in evidence, although no internal revenue stamp is thereunto affixed.

5. In a suit against the county on the bonds, the execution of them is admitted, unless it be denied by a plea or an answer, verified by affidavit.

6. Where the ownership was alleged in the petition, and the answer denied that the coupons were, in good faith and before they matured, owned by the plaintiff, evidence of the fact is admissible.

ERROR to the Circuit Court of the United States for the Eastern District of Missouri.

This suit was brought by Joseph M. Douglass against the County of Ralls, to recover the amount due upon certain interest coupons detached from bonds issued by the defendant in payment of its subscription to the capital stock of the St. Louis and Keokuk Railroad Company, which was incorporated by an act of the General Assembly of Missouri approved Feb. 16, 1857.

The section of the act under which the county claimed the right to subscribe is set forth in the opinion of this court in the following case, p. 733.

The bonds are sealed with the seal of the county court, tested by the clerk, and countersigned by the agent of the county. Those bearing date Feb. 10, 1870, recite that they are issued under the authority of said act, and in pursuance of an order of the county court of Feb. 8, 1870, to subscribe $200,000 to the capital stock of that company. Those bearing date June 13, 1871, differ in their recitals from the others, in stating that they are issued in pursuance of that

order and of an order amendatory thereof dated June 13, 1871.

A demurrer was sustained to several of the defences set up in the answer. Upon the issues of fact the jury rendered a verdict for the plaintiff, and, judgment having been rendered thereon, the county brought this writ of error. The questions arising upon the demurrer and during the trial are stated in the opinion of the court.

*Mr. Henry A. Cunningham* for the plaintiff in error.
*Mr. John H. Overall* for the defendant in error.

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

If we understand correctly the questions presented in this case, they are —

1. Whether, if county bonds are issued in Missouri by a *de facto* county court, and are sealed with the seal of the court and signed by the *de facto* president, they can be impeached in the hands of an innocent holder by showing that the acting president was not *de jure* one of the justices of the court.

2. Whether it can be shown as a defence to bonds issued by counties in Missouri in payment of subscriptions to the capital stock of a company, and in the hands of innocent holders, that the company to whose stock the subscription was made was not organized within the time limited by its charter.

3. Whether bonds issued by counties in Missouri during the years 1870 and 1871, in payment of subscriptions to the stock of railroad companies, without a vote of the people, are invalid if the subscription was made under authority of charters granted in 1857, which did not require such a vote to be taken.

4. Whether county bonds and coupons issued in the years 1870 and 1871, in payment of subscriptions to railroad companies, were admissible in evidence on the trial of an action against the county for the recovery of the amount due thereon, if not stamped as obligations for the payment of money under the provisions of the internal revenue laws of the United States in force at the time of their issue.

5. Whether in this suit it was necessary to prove the order

of the county court authorizing the president of the court to sign and the agent to countersign the bonds, there being no plea or answer sworn to denying the execution of the bonds or coupons sued on.

6. Whether testimony was admissible to prove that the plaintiff was a *bona fide* holder and owner of the coupons sued on, there being no averment in the petition to that effect.

There are other questions presented by the assignments of error, but they are not alluded to in the argument, and we do not deem them of sufficient importance to require attention.

1. As to the competency of the court.

In no State is it more authoritatively settled than in Missouri that "the acts of an officer *de facto* (although his title may be bad) are valid, so far as they concern the public or the rights of third persons who have an interest in the things done." In *State* v. *Douglass* (50 Mo. 593, 596), the Supreme Court of that State said: "Without this rule the business of a community could not be transacted. The public are necessarily compelled to do business with an officer who is exercising the duties and privileges of an office under color of right, and to say that his acts as to strangers should be void would be productive of irreparable mischief. It would cause a suspension of business till every officer's right *de jure* was established." To the same effect is *Harbaugh* v. *Winsor*, 38 id. 327. This is conclusive. The question here is not whether Dimmick was *de jure* probate judge of Ralls County, but whether he was acting under color of right as a justice and president of the county court. That is averred in the petition and not denied in the answer. His right to the office is one thing; his action while exercising the duties of the office, another.

2. As to the organization of the company.

Both this court and the Supreme Court of Missouri have held over and over again that such a defence as was here set up cannot be maintained. *Hale Bank* v. *Merchants' Bank of Baltimore*, 10 id. 123; *Kayser* v. *Trustees of Bremen*, 16 id. 88; *Smith* v. *County of Clark*, 54 id. 58; *City of St. Louis* v. *Shields*, 62 id. 247; *County of Macon* v. *Shores*, 97 U. S. 272.

3. As to the vote of the people.

The Supreme Court of Missouri has many times decided, and this court, following such decisions, has always held, that the provision in the State Constitution of 1865, art. 11, sect. 14, prohibiting a county from becoming a stockholder in or loaning its credit to a corporation without a vote of the people, was intended as a limitation on future legislation only, and did not operate to repeal enabling acts in existence when the Constitution took effect. *State* v. *Macon County Court*, 41 Mo. 453; *Kansas City, &c. Railroad Co.* v. *Alderman*, 47 id. 349; *State* v. *County Court of Sullivan County*, 51 id. 522, decided in 1873, in which it was said, " it has always been held that the provision of the Constitution, art. 11, sect. 14, was a limitation upon the future power of the legislature, and was not intended to retroact so as to have any controlling application to laws in existence when the Constitution was adopted; " *State* v. *Greene County*, 54 id. 540; *County of Callaway* v. *Foster*, 93 U. S. 567; *County of Scotland* v. *Thomas*, 94 id. 682; *County of Henry* v. *Nicolay*, 95 id. 619; *County of Cass* v. *Gillett*, 100 id. 585.   When all these cases were decided the act of March 23, 1861, was in force, which provided that it should not be lawful for counties to subscribe to the stock of railroad companies until an election had been held under the provisions of that act, yet it seems never to have been specially referred to, either by counsel or the court, except once in *Smith* v. *Clarke County* (54 Mo. 58, 70), when Napton, J., said: " So that the provisions of the revised code of 1855, and the amendatory acts of 1860 and 1861, and the constitutional prohibition, and the legislative adoption of that prohibition immediately after its passage, have been held by repeated adjudications, and without any conflicting opinions of the court, or any individual judge thereof, so far as their reports show, not to effect the repeal of the privileges contained in special charters."

Such being the condition of the law on this subject down to April, 1878, we do not feel inclined to reconsider our former rulings, and follow the later decisions of the Supreme Court of the State in *State* v. *Garroute* (67 Mo. 445) and *State* v. *Dallas County* (72 id. 329), where this whole line of cases was substantially overruled.   The bonds involved in this suit were all in

the hands of innocent holders when the law of the State was so materially altered by its courts. In our opinion, the rights of the parties to this suit are to be determined by the " law as it was judicially construed to be when the bonds in question were put on the market as commercial paper." *Douglass* v. *Pike County*, 101 U. S. 687.

4. As to the stamps.

The act of July 13, 1866, c. 184 (14 Stat. 141), amending sect. 154 of June 30, 1864, c. 173 (13 id. 293), provided that all official instruments, documents, and papers issued by the officers of the United States government, or by the officers of any State, county, town, or other municipal corporation, should be exempt from taxation. This exempted the class of public securities to which these bonds and coupons belong. It is, indeed, said in a proviso that the intention was only to exempt State, county, town, or municipal corporations from taxation while in the exercise of the functions strictly belonging to them in their ordinary governmental and municipal capacity; but that does not, as we think, affect this case. These bonds were issued by this county in its municipal capacity, and for purposes which were declared by law to be municipal.

5. As to the proof of authority from the county court.

It is conceded that, under the practice in Missouri, unless the execution of the bonds was denied under oath, their execution was admitted. There was no such denial here. Hence it was only necessary to prove such facts connected with the execution as were directly put in issue by the pleadings. The only defence relied on under this branch of the case was the authority of the court to make the order it did. All else was, therefore, admitted. As the presiding judge was necessarily the president of the court, the bonds are not invalid because signed by the president as presiding judge.

6. As to proof of *bona fide* ownership.

Ownership was alleged in the petition. This ownership at the maturity of the coupons and for value was denied in the answer. This clearly made the evidence not only proper but necessary.

Since all the defences relied on involved questions of law only, except that as to *bona fide* ownership, and the court

correctly decided the legal propositions in favor of the plaintiff, it was not error to instruct the jury to bring in a verdict for the plaintiff if they believed he was a *bona fide* holder and owner of the coupons sued for.

*Judgment affirmed.*

MR. JUSTICE BLATCHFORD did not sit in this case, nor take any part in deciding it.