## TOWN OF EAST LINCOLN *v.* DAVENPORT.

1. In a suit by a *bona fide* holder against a municipal corporation to recover the amount of coupons annexed to bonds issued by it, under authority conferred by law, questions of form merely, or irregularity, or fraud, or misconduct on the part of its agents, cannot be considered.

2. Where an act of the legislature, authorizing a town to subscribe to the capital stock of a certain railroad company, provides, that if a majority of the legal voters, voting at an election held for that purpose, shall be found to be in favor of such subscription, it shall be deemed and held that such town had taken stock in said company according to the proposals made, — *Held*, that the statute makes such a majority vote equivalent to, and a substitute for, a subscription by the town upon the books of the company.

3. Where it was provided by a general law, or the charter of the company when such subscription was made, that the company might consolidate with other companies, in order to carry out the object of its charter, and that its franchises, rights, subscriptions, and credits might be transferred, and where such consolidation was effected, and a subsequent transfer by the consolidated company was lawfully made to a new company engaged in the construction of a connecting road, thus forming a continuous line, the stockholders in the former companies becoming stockholders in the new company, — *Held*, that a delivery by the town to such new company of the bonds for the payment of the original subscription, and a receipt of a certificate of stock in it, were warranted by law.

ERROR to the Circuit Court of the United States for the Southern District of Illinois.

The facts are stated in the opinion of the court.

Submitted on printed arguments by *Mr. J. M. Palmer* for the plaintiff in error, and by *Mr. S. M. Cullom* for the defendant in error.

MR. JUSTICE HUNT delivered the opinion of the court.

The question is as to the legality of certain bonds issued by the town of East Lincoln, bearing date of the second day of April, 1873.

The case shows that the plaintiff below was the *bona fide* owner of the coupons sued upon. Questions of form merely, or irregularity, or fraud, or misconduct on the part of the agents of the town, cannot, therefore, be considered. Whether the supervisor of the town signed the bonds during the midnight hours, whether he delivered them at about daylight on the morning of April 2, 1873, and whether he immediately left

the town to avoid the service of an injunction, are matters not chargeable to the owner of the bonds. The supervisor was not his agent, but the agent of the town, and if there has been misconduct on his part, the town rather than a stranger must bear the consequences. There must be authority in the town to issue the bonds by the statutes of the State. If this cannot be found, the holder must fail; if it exists, he is entitled to recover.

It is denied that a subscription was made by the town to the stock of the Havana, Mason City, Lincoln, and Eastern Railway Company; and it is found as a fact by the judge who tried the action, that " no subscription was ever made by the town of East Lincoln on the books of " the railway company.

The bonds recite that they are issued in pursuance of the authority given at an election by the voters of said town, held on the thirty-first day of May, 1870, in pursuance of the authority of two several statutes referred to in said bonds.

The fifth section of the act of March 27, 1869, amendatory of the act of March 9, 1867 (both statutes are referred to in the bonds), prescribes the manner in which the election shall be held, and the record shows that, on the thirty-first day of May, 1870, an election was held under said act, and that a majority of the legal voters attending and voting at said election voted in favor of a subscription of $60,000 to the capital stock of the said company. That section provides " that if a majority of the legal voters of such town, . . . voting at such election, shall be in favor of such subscription, then it shall be deemed and held that said town . . . has taken stock in said railroad company according to the proposals made in said petition to said clerk."

We are aware of no legal restriction upon the power of the legislature to declare what shall amount to a subscription to stock in an incorporated company, or what shall be the evidence that the party proposing to take the stock has completed the contract on its part. It may require such evidence to be in writing upon the books of the company, under the authority of the officers of the town, or it may authorize it to be done by an order or resolution of the county court, or it may authorize an

engagement to take stock to be made by parol, or, as in the case before us, it may provide that the expressed wish of the voting majority of its inhabitants, at a legally convened town-meeting, shall amount to a subscription, or shall be deemed and held to be a taking of the stock of the company. *Nugent* v. *The Supervisors*, 19 Wall. 241.

We think the statute intended to make a majority vote of the legal voters of the town who voted at such an election an equivalent to and substitute for a subscription upon the books of the company.

The subscription thus authorized has been accepted by the successors of the said corporation, and, so far as the record shows, by the original corporation.

In our opinion, the subscription thus made was valid.

If valid as a subscription to the original incorporation, has it lost its force and vitality in consequence of the changes which have taken place in the organizations concerned in this transaction? The corporation known as the Havana, Lincoln, and Champaign Railroad Company was organized under the act of March 9, 1867, creating a company to construct a railroad from Ipava, in Fulton County, to Havana, Lincoln, Clinton, and Champaign, and from the latter place to some point on the Toledo, Wabash, and Western Railway. The corporation was authorized to unite or connect with any other railroad then or thereafter running east and west, and full power was given to lease, purchase, and make all such contracts as would secure the object of such connection. The act of March 27, 1869, amended that act by changing the name of the company to Havana, Mason City, Lincoln, and Eastern Railway Company.

By the acts of Feb. 21, 1861, and Feb. 16, 1865, the Monticello Railroad Company was chartered, with power to build a road from Champaign, by the way of Monticello, to Decatur, all in the State of Illinois. It was authorized to transfer all its stock, property, immunities, and franchises to any other corporation whose line intersected its road, and who would complete the same. On the twenty-eighth day of June, 1872, this company and the other above mentioned entered into articles of consolidation, merging the two companies into one, which was invested with all the powers, franchises, rights, immunities,

property, and privileges of either or both of the former companies, and transferring all contracts and obligations, certificates, bonds, &c. The consolidation was made with all the forms and solemnities required by law. The consolidated company assumed the name of one of the companies, — the Havana, Mason City, Lincoln, and Eastern Railway Company.

On the 20th of July, 1869, still another corporation, chartered to construct a railroad from Danville to Pekin, was consolidated with the Indianapolis, Crawfordsville, and Danville Railroad Company, under the name of the Indianapolis, Bloomington, and Western Railway Company.

In its course to the eastern boundary of the State of Illinois, this road passed through Urbana and Champaign City, two places mentioned in the former charters named.

By the seventh section of its charter, this corporation was given power to unite or connect itself with any other railroad company in the State, and to lease or purchase such other roads, and to "become vested with all the rights and franchises of such road so leased or purchased, in the right of way, maintenance, and construction thereof."

On the twenty-eighth day of June, 1872, the consolidated company known as the Havana, Mason City, Lincoln, and Eastern Railway Company entered into an arrangement with the Indianapolis, Bloomington, and Western Railway Company, by which there was transferred to the latter the railroad rights of way of said consolidated company, together with all demands, moneys, subscriptions, things in action, privileges, immunities, credits, rights, choses in action, especially naming the subscriptions, of which the one in question is a part. Certain covenants and agreements on the part of the grantee are set forth, of which the completion of the road from Havana to White Heath within two years was one; and, upon failure so to complete, it was agreed that the road should revert to its former owners. The stockholders of each company were made stockholders in the new, to the same amount as in the old, company.

This contract was carried into effect without delay, the roads were consolidated and completed, as therein provided for; and assuming that, as the successor and assignee of the Havana and Mason City Company, the Indianapolis, Bloomington, and

Western Railway Company was entitled to the completion of the contract of subscription made by the election before described, the supervisor of the town of East Lincoln did, on the 2d of April, 1873, deliver the town bonds for the amount of such subscription, and receive a certificate of stock in the latter company to the same amount.

We hold this action to have been warranted both by a fair construction of the statutes and by the decisions of this court Every substantial result contemplated for the benefit of the towns by the subscription made has been accomplished. A continuous line of railway, crossing the State of Illinois from east to west, beginning at Havana, on the Illinois River, and reaching Danville, on its eastern border, has been completed, and is in operation. This part of the road is as nearly in a direct course to the east as it could well have been made; and, commencing at Havana, running easterly, terminates at a point originally contemplated, and then connects with roads leading to the east and to the north and south.

The statutes we have referred to indicate that the legislature supposed that such consolidation and agreements as were here made might be necessary. If the company first organized could not of itself build the road, it might combine with any intersecting or connecting road from which it could hope for aid. The arrangement with the Monticello road promised fairly, and, so far as we can discover, was of service in obtaining the completion of the road.

If the first arrangement did not affect the purpose of finishing the road, an arrangement, by way of sale or otherwise, to still another company was authorized. Thus the transfer to the Bloomington, Indianapolis, and Western Railway Company was made, and by means of it the great object — the building of a connecting and operating railroad from Havana to the eastern boundary of the State — was attained.

All this was provided for in the charter of the original company, to which the town subscription was made, and the subscription was made with the knowledge of the town that new organizations might be made, and that the subscription was liable to be transferred to and its stock to become that of another company. The statutes were no doubt in accordance with the

public wish at the time of their passage, the evident principle being to give every facility and aid, by the means suggested, to obtain a line of completed railroad to the eastern boundary of the State. Subsequent events have given more prominence to the question of paying the bonds than it then had.

The case falls directly within *Nugent* v. *The Supervisors, supra,* which holds that a subscriber is released from his subscription by a subsequent alteration of the organization and purposes of the company only when the alteration is a fundamental one, not contemplated either by the charter of the company or the general statutes of the State. The statute authorizing the alteration of the charter in that case closely resembled the statute we have above quoted in relation to the roads in question.

To the same general effect are *County of Callaway* v. *Foster,* 93 U. S. 567, and *County of Scotland* v. *Thomas, supra,* p. 682. The decision in *Harshman* v. *Bates County,* 92 U. S. 569, does not interfere with this principle. The distinction is clearly shown by Mr. Justice Bradley, who pronounced the opinion in each of the last two cases. The like remarks are applicable to *Marsh* v. *Fulton,* 10 Wall. 677, and they show that that decision does not affect the questions here discussed.

*Judgment affirmed.*