LIVINGSTON COUNTY, MISSOURI *v.* FIRST NATIONAL BANK OF PORTSMOUTH, NEW HAMPSHIRE.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF MISSOURI.

No, 195. Submitted October 9, 1888. — Decided October 29, 1888.

In this case bonds issued by Livingston County in Missouri, on behalf of Chillicothe township, in payment of a subscription to the stock of the Saint Louis, Council Bluffs & Omaha Railroad Company were held valid.

The vote of the township, given in May, 1870, was in favor of the issue of the bonds to the Chillicothe & Omaha Railroad Company, a Missouri corporation. Afterwards, under a statute existing at the time of the vote, that company was consolidated with an Iowa corporation, under the name of the corporation to which the bonds were subsequently issued. *Held*, that the consolidation was authorized and that the privilege of receiving the subscription passed to the consolidated company.

The vote having contemplated the construction of the railroad which the consolidated company built, there was no diversion from the purpose contemplated by the vote, in the fact that the stock was subscribed, and the bonds issued, to the consolidated company.

The doctrine of *Harshman* v. *Bates County*, 92 U. S. 569, and *County of Bates* v. *Winters*, 97 U. S. 83, that a County Court in Missouri could not, on a vote by a township to issue bonds to a corporation named, issue the bonds to a corporation formed by the consolidation of that corporation with another corporation, would not be, if applied here, a sound doctrine.

On the recitals in the bonds, and the other facts in this case, the county was estopped from urging, as against a *bona fide* holder of the bonds, the existence of any mere irregularity in the making of the subscription or the issuing of the bonds.

THIS was a suit commenced on the 4th of September, 1882, by the First National Bank of Portsmouth, New Hampshire, against the county of Livingston, in the State of Missouri, to recover the amount of 312 coupons, for $20 each, being 13 coupons, due from July 1st, 1876, to July 1st, 1882, both inclusive, on each one of 24 bonds for $500 each, each of the bonds, except as to number, being in the following form: —

## "*Fifteen-Year Bond.*

"COUNTY OF LIVINGSTON, *State of Missouri:*

"Livingston County bond issued in behalf of the municipal township of Chillicothe. Interest eight per cent per annum, payable on the first days of January and July. Fifteen years. No. 18.

"Know all men by these presents, that the county of Livingston, in the State of Missouri, acknowledges itself indebted and firmly bound to the Saint Louis, Council Bluffs & Omaha Railroad Company in the sum of five hundred dollars ($500), which sum the said county hereby promises to pay to the said Saint Louis, Council Bluffs & Omaha Railroad Company, or bearer, at the National Bank of Commerce, in the city of New York, State of New York, on the first day of July, 1885, together with interest thereon from the first day of July, 1870, at the rate of eight (8) per cent per annum, which interest shall be payable semi-annually on the first days of January and July of each year, on the presentation or delivery at said bank of the coupons of interest hereto attached. This bond being issued under and pursuant to an order of the County Court of Livingston County, authorized by a two-thirds vote of the people of Chillicothe municipal township.

"In testimony whereof the said county of Livingston has executed this bond by the presiding justice of the County [L. S.] Court of said county, under an order of said court, signing his name hereto, and by the clerk of said court, under the order thereof, attesting the same and affixing thereto the seal of said court.

"This done at the city of Chillicothe, county of Livingston aforesaid, this tenth day of April, A.D. 1871.

"G. W. McDOWELL,
"*Presiding Justice of the County Court of*
"Attest: *Livingston County, State of Missouri.*
"[Seal of the County Court of Livingston County.]
"W. H. GAUNT,
"*Clerk of the County Court of Livingston County,*
*State of Missouri.*"

Attached to each of the bonds were coupons for the interest, each, except as to number and date when due, being in the following form:—

"$20. · CHILLICOTHE, LIVINGSTON COUNTY, Mo., *January* 1, 1871.

"The county of Livingston acknowledges to owe the sum of twenty dollars on the first day of July, 1871, being interest on bond number one for five hundred dollars. This coupon payable at the National Bank of Commerce in the city of New York, State of New York.

"W. H. GAUNT,
"*Clerk of the County Court of Livingston County,*
*State of Missouri.*"

Successive coupons for each instalment of interest were attached to each bond.

The petition by which the suit was commenced alleged that the defendant made and delivered the bonds in behalf of the municipal township of Chillicothe; that the bonds were issued under and pursuant to an order of the County Court of Livingston County, authorized by a two-thirds vote of the people of that township, as is recited in the bonds, and in aid of the St. Louis, Council Bluffs and Omaha Railroad, under authority of an act of the legislature of the State of Missouri, entitled "An Act to facilitate the Construction of Railroads in the State of Missouri," approved March 23d, 1868, and of the Constitution of the State of Missouri; that, as each coupon for the semi-annual interest had, prior to July 1st, 1876, matured, the same was paid by the officers of the county, on behalf of said town-

ship, with the proceeds of a tax levied and collected each year by the county, from the taxpayers of the township, for that purpose; that, before the coupons sued on became due and payable, the bonds and coupons were sold to, and for value became the property of, the plaintiff, which had ever since been the legal holder, owner, and bearer thereof; and that the defendant, on and after July 1st, 1876, had refused to pay any of the coupons then or since becoming due, or to levy any tax for their payment.

The provisions of the act of March 23d, 1868, in regard to the issuing of bonds, in the name of a county, in behalf of a municipal township therein, which apply to the present case, are as follows (1 Wagner's Statutes of Missouri of 1870, 313):—

" Section 51. Whenever twenty-five persons, taxpayers and residents in any municipal township, for election purposes, in any county in this State, shall petition the County Court of such county, setting forth their desire, as a township, to subscribe to the capital stock of any railroad company in this State, building or proposing to build a railroad into, through or near such township, and stating the amount of such subscription, and the terms and conditions on which they desire such subscription shall be made, it shall be the duty of the County Court, as soon as may be thereafter, to order an election to be held in such township to determine if such subscription shall be made; which election shall be conducted and returns made in accordance with the laws controlling general and special elections; and if it shall appear, from the returns of such election, that not less than two-thirds of the qualified voters of such township voting at such election are in favor of such subscription, it shall be the duty of the county court to make such subscription in behalf of such township, according to the terms and conditions thereof; and if such conditions provide for the issue of bonds in payment of such subscription, the county court shall issue such bonds in the name of the county, with coupons for interest attached; but the rate of interest shall not exceed ten per cent per annum; and the same shall be delivered to the railroad company.

" Section 52. In order to meet the payments on account of the

subscription to the stock, according to its terms, or to pay the interest and principal on any bond which may be issued on account of such subscription, the County Court shall, from time to time, levy and cause to be collected in the same manner as county taxes, a special tax, which shall be levied on all real estate lying within the township making the subscription, in accordance with the valuation then last made by the county assessor for county purposes.

" Section 53. The county treasurer shall be authorized and required to receive and collect of the sheriff of the county the income from the tax provided in the previous section, and to apply the same to the payment of the stock subscription, according to its terms, or to the payments of interest and principal on the bonds, should any be issued in payment of such subscription ; he shall pay all interest on such bonds out of any money in the treasury collected for this purpose, by the tax so levied, as the same becomes due, and also the bonds as they mature, which shall be cancelled by the County Court, and this service shall be considered a part of his duty as county treasurer."

The answer of the defendant to the petition contains a general denial, and also sets forth, that no petition was ever presented to the County Court of Livingston County by the taxpayers of the municipal township of Chillicothe, as required by the act of 1868, praying for the election named in the act, nor did that court ever order any election to be held in the township, as to whether it would subscribe any amount to the capital stock of the St. Louis, Council Bluffs and Omaha Railroad Company ; nor did the county court ever order, direct, or authorize the bonds or the coupons in question to be issued ; nor was any election ever held in the township to determine whether it, or the voters therein, would consent to any subscription on its account to the capital stock of the said railroad company or to the issuing of the bonds and coupons ; and that the issuing and delivery of them were without authority of the County Court, and in violation of the Constitution and laws of Missouri. The answer also denied that the plaintiff was the owner and holder in good faith, and for value, of the bonds and coupons in question.

The plaintiff put in a replication to the answer, denying each and every allegation of new matter therein contained.

The cause was in due form heard by the court without the intervention of a jury, and it made a finding of facts and of conclusions of law in favor of the plaintiff, upon which a judgment for it was rendered, on the 6th of January, 1885, for $8476.60, with costs, against the county of Livingston, " to be collected, if necessary, by mandamus against the County Court of said county, commanding it to levy and collect from Chillicothe municipal township, in said county, a special tax according to law for the payment of said judgment, interest, and costs, and to pay the same." To review this judgment the defendant brought a writ of error.

The facts found by the Circuit Court, other than those which were merely formal, were as follows: The defendant issued twenty-four bonds, on the 10th of April, 1871, numbered consecutively from 1 to 24 inclusive, signed by the presiding justice of the County Court, attested by its clerk, and with the seal thereof, each in the form before set forth, and with coupons in the form before given. The plaintiff, in April, 1871, bought all of the bonds and the coupons thereto attached and not then matured, in the open market, for cash, and without notice of any defect or infirmity therein or in the action of the County Court in issuing the same, and has ever since been and still is, the holder of the bonds and the unpaid coupons thereon, and, at the time of the institution of this suit, was the holder of the coupons then matured and described in the petition. The bonds were issued under the following circumstances: By articles of association entered into on the 18th of June, 1867, and filed in the office of the Secretary of State of the State of Missouri on the 14th of July, 1868, a corporation was created by the name of the St. Louis, Chillicothe and Omaha Railroad Company. The articles declared that the object of the association was to construct, maintain, and operate a railroad for public use in the conveyance of persons and property, from the city of Chillicothe, in the county of Livingston and State of Missouri, to such point on the boundary line between Missouri and Iowa as should be

deemed, after actual survey, "to be on the most direct and feasible route for constructing, maintaining, and operating a railroad between the said city of Chillicothe and the city of Omaha in the State of Nebraska;" that the length of the railroad should be about ninety miles, and it should be made into or through the counties of Livingston, Daviess, and Gentry, and into or through one or more of the counties of Nodoway, Harrison, and Worth. The articles also declared that the association was "organized under and subject to the laws of the State of Missouri contained in chapters sixty-two and sixty-three of Title XXIV of the General Statutes of Missouri of 1865, possessing all and singular the powers therein contained." (General Statutes of Missouri of 1865, 326–344.)

At a meeting of the stockholders of the St. Louis, Chillicothe and Omaha Railroad Company, held on the 4th of June, 1869, its name was changed, by their vote, to that of the Chillicothe and Omaha Railroad Company, and evidence thereof was filed in the office of the Secretary of State of the State of Missouri on the 25th of June, 1869.

On the 3d of May, 1870, a petition signed by more than 25 taxpayers and residents of the municipal township of Chillicothe was filed in the County Court of Livingston County, setting forth that the petitioners, as a township, desired to subscribe $15,000 to the capital stock of the Chillicothe and Omaha Railroad Company, subject to the following conditions: "1st. Payment of said subscription to be made in bonds of Livingston County (issued in accordance with the law regulating subscriptions by municipal townships to railroad companies), at par; said bonds to be payable fifteen years from the first day of July, 1870, and bearing interest at the rate of eight per cent per annum, payable semiannually. 2d. The bonds to be issued to said company when it shall have continuously graded its road-bed on or near its present located survey from the city of Chillicothe to the western boundary of Livingston County." The County Court, on the 3d of May, 1870, made an order reciting the contents of the petition, and directing that an election be held at the usual place of voting in the township, Chillicothe election district, on the 27th of

May, 1870, to determine if such subscription should be made. The order prescribed the forms of the respective ballots, for and against the subscription. On the 25th of May, 1870, the County Court made an order that the question to be voted upon at the election so to be held should be whether the township should subscribe $12,000 to the capital stock, of the said railroad company, upon the same conditions as before mentioned, the ballots to be in like form.

The election was held on the 27th of May, 1870. On the 30th of May, 1870, the votes cast were duly canvassed, and an abstract thereof was made and entered of record in the County Court, signed by the president of that court and a justice of the peace, and attested by the signature of the county clerk, showing that 320 votes had been cast for, and 50 votes against, the subscription of $12,000 to the capital stock of said company.

On the 23d of September, 1870, there were filed in the office of the Secretary of State of the State of Iowa articles of association, in conformity to chapter 52 of Title X and other laws of Iowa, of the revision of 1860, incorporating the St. Louis, Council Bluffs and Omaha Railroad Company in Iowa, to construct and operate a railroad. The articles contained the following clause: "The main line of said railroad shall extend from and from within the city of Council Bluffs, in the State of Iowa, and from such other point adjacent to the eastern terminus of the Union Pacific Railroad, on the banks of the Missouri River, as the board of directors may hereafter designate; thence in a southwesterly direction to the State line between the States of Iowa and Missouri, at a point where the Chillicothe and Omaha Railroad shall reach said state line, and, in the event of the consolidation of this company and corporation with the said Chillicothe and Omaha Railroad Company, a company incorporated under the general laws of the State of Missouri, then, in connection with the last-mentioned railroad, to form a continuous line of railroad from the city of Omaha, in the State of Nebraska, and the city of Council Bluffs, in the State of Iowa, to the city of St. Louis, in the State of Missouri; and the board of directors of the corpora-

tion hereby created shall have the power at any time, when the same can be lawfully done, to consolidate this corporation with the Chillicothe and Omaha Railroad, in Missouri, aforesaid, and this corporation shall have, hold, and by its board of directors exercise, all the powers, rights, privileges, and franchises granted and conferred by the laws of the State of Iowa, revision of A.D. 1860, and of all laws amendatory thereof and supplemental thereto." These articles had, on the 13th of September, 1880, been filed for record in the office of the recorder of Pottawatomie County, in the State of Iowa.

At a meeting of the stockholders of the Chillicothe and Omaha Railroad Company, held on the 20th of September, 1870, "all the stock of the company being present thereat," a resolution was passed by the stockholders unanimously, directing the board of directors of the company to effect a consolidation of it with the St. Louis, Council Bluffs and Omaha Railroad Company, of the State of Iowa. Articles of consolidation were, on the same day, entered into between the two corporations, consolidating the two into one, "for the purpose of constructing, owning, maintaining, using, and operating a continuous line of railroad from the city of Omaha, in Nebraska, and the city of Council Bluffs, in Iowa, to the city of Chillicothe, in Missouri, under the name of the St. Louis, Council Bluffs and Omaha Railroad Company." These articles of consolidation were executed by the president of the Chillicothe and Omaha Railroad Company, on behalf of that company, under a resolution of its board of directors to that effect, which was approved by more than three-fourths of all the stock in the company. The articles of consolidation and the proceedings thereon on the part of the Chillicothe and Omaha Railroad Company were filed in the office of the Secretary of State of the State of Missouri on the 7th of October, 1870, and the same articles of consolidation and the proceedings of the meeting of stockholders of the Chillicothe and Omaha Railroad Company, authorizing the consolidation, were filed in the office of the Secretary of State of the State of Iowa, on the 10th of December, 1870.

In the year 1871, a railroad was constructed by the corpo-

ration acting under the name of the St. Louis, Council Bluffs and Omaha Railroad Company, from the city of Chillicothe, in Livingston County, Missouri, upon and over the line set forth and described in the articles of association filed in the office of the Secretary of State of the State of Missouri on the 14th of July, 1868, to a point on the boundary line between the States of Missouri and Iowa, and has been continued thence to the city of Omaha, Nebraska, and has ever since been operated on that line.

The County of Livingston paid all the interest coupons on the 24 bonds as they respectively matured, to and including those falling due July 1st, 1876, from the proceeds of taxes levied in each year upon the taxable property of Chillicothe township in that county.

On the 21st of February, 1877, the County Court of Livingston County entered an order on its records, as follows: "Whereas, by a decision of the Supreme Court of the United States in a case wherein Bates County, of this State, was a party, it was held that all township bonds issued under and by virtue of an act of the State of Missouri, entitled 'An Act to facilitate the Construction of Railroads in the State of Missouri,' approved March 23d, 1868, are null and void, owing to the unconstitutionality of said act, which decision, as we are informed, has since been reaffirmed by U. S. Circuit Judge Dillon, and whereas, under and by virtue of said act above recited, the county of Livingston, for the use and in behalf of the municipal township of Chillicothe, did, in A.D. 1870, issue and deliver, under said act above recited, to the St. Louis, Council Bluffs and Omaha Railroad Company, a series of bonds, in amount twelve thousand dollars, to run for fifteen years, and each for the sum of five hundred dollars: Now, therefore, it appearing that all of said bonds are null and void, it is hereby ordered that, from and after this date, the treasurer of the county be commanded and directed to refuse payment of said bonds or any of them, together with all coupons for interest thereto attached, in whosesoever hands they may be found, or by whomsoever they may be presented, until otherwise directed by this court or by some competent superior authority."

The conclusion of law of the Circuit Court upon the foregoing facts was in these words: "Upon consideration of the foregoing facts, which constitute all the facts and evidence produced in the cause, the court finds that the county of Livingston, in the State of Missouri, is indebted to the plaintiff, the First National Bank of Portsmouth, New Hampshire, by reason of the non-payment of the coupons described in the petition and the facts aforesaid, in the sum of eight thousand four hundred and seventy-six dollars and sixty cents ($8476.-60)."

There is also found in the record a bill of exceptions. When the plaintiff offered in evidence the 24 bonds, the defendant objected, on the ground that the bonds were void on their faces, and showed no authority for their issue. The court overruled the objection and permitted the bonds to be read in evidence, to which ruling the defendant excepted. A like objection and exception were taken by the defendant to the reading in evidence of the coupons sued on. When the plaintiff offered in evidence the tax levies for the years 1872, 1873, 1874, 1875, and 1876, for the purpose of showing that in each of those years the County Court of Livingston County made a levy upon the property in the township of Chillicothe, of taxes for the payment of the interest on the bonds in question, the defendant objected to the evidence, on the ground that there could be no ratification of the issuing of the bonds, if the issue was unlawful. The objection was overruled, and the defendant excepted. No other exceptions appear by the bill of exceptions.

*Mr. James L. Davis* and *Mr. Henry N. Ess* for plaintiff in error.

*Mr. G. S. Eldredge* for defendant in error.

Mr. Justice Blatchford, after stating the case as above reported, delivered the opinion of the court.

The grounds urged for reversing the judgment are (1) that the statutes of Missouri did not authorize the consolidation of

a railroad company organized under the laws of Missouri with a railroad company organized under the laws of another State; (2) that an authority to subscribe to stock in, and issue bonds to, the Chillicothe and Omaha Railroad Company was not an authority to subscribe to stock in, and issue bonds to, the St. Louis, Council Bluffs and Omaha Railroad Company; and (3) that it does not appear by the face of the bonds, or by the findings of the court, that the County Court ordered any subscription for stock in either the Chillicothe and Omaha Railroad Company or the St. Louis, Council Bluffs and Omaha Railroad Company to be made, or that any subscription for stock of either of those companies was in fact made, or that any stock of either company was ever issued to the county or to the township.

(1) As to the authority for consolidation. It was enacted as follows by the act of the legislature of Missouri, approved March 2d, 1869, entitled "An Act to authorize the Consolidation of Railroad Companies in this State with Companies owning Connecting Railroads in Adjoining States," (Laws of 1869, p. 75, and 1 Wagner's Missouri Stats. of 1870, p. 314, § 56): "Section 1. That any railroad company organized under the general or special laws of this State, whose tracks shall at the line of the State connect with the track of the railroad of any company organized under the general or special laws of any adjoining State, is hereby authorized to make and enter into any agreement with such connecting company, for the consolidation of the stock of the respective companies whose tracks shall be so connected, making one company of the two, whose stock shall be so consolidated, upon such terms and conditions and stipulations, as may be mutually agreed upon between them, in accordance with the laws of the adjoining State in which the road is located, with which connection is thus formed." The statute then went on to enact details in regard to the consolidation. The fourth section of the act provided as follows: "Section 4. Any such consolidated company shall be subject to all the liabilities, and bound by all the obligations of the company within this State, which may be thus consolidated with one in the

adjacent State, as fully as if such consolidation had not taken place, and shall be subject to the same duties and obligations to the State, and be entitled to the same franchises and privileges under the laws of this State, as if the consolidation had not taken place." This statute applied to the consolidation in question although no road had yet been constructed.

It is not contended that the provisions of this statute were not complied with in making the consolidation in question. The consolidated company was, by the statute, to be entitled to the same privileges under the laws of the State of Missouri as if the consolidation had not taken place. This can only mean that it was to be entitled to the same privileges under the laws of Missouri, that the Missouri corporation was entitled to under the laws of that State at the time the consolidation took place. One of those privileges was the privilege of a subscription to stock by the township of Chillicothe.

(2) As to the authority to subscribe to stock in, and issue bonds to, the St. Louis, Council Bluffs and Omaha Railroad Company, under the vote of the people of the township to subscribe to stock in, and issue bonds to, the Chillicothe and Omaha Railroad Company. The case of *Harshman* v. *Bates County*, 92 U. S. 569, decided by this court at October term, 1875, is relied upon by the plaintiff in error as a decision against the validity of the bonds in that respect. It arose under the same statute of Missouri, of March 23d, 1868. The bonds were issued by the county of Bates, in behalf of Mount Pleasant township, in that county, to the Lexington, Lake and Gulf Railroad Company, in January, 1871. The taxpayers of the township had, in May, 1870, at an election, voted in favor of a subscription to the stock of, and the issue of bonds to, the Lexington, Chillicothe and Gulf Railroad Company. In October, 1870, that corporation was consolidated with another corporation, under the name of the Lexington, Lake and Gulf Railroad Company. Thereafter, in January, 1871, the County Court, in pursuance only of the authority conferred by such vote, subscribed the specified amount, in behalf of the township, to the consolidated company, and issued the bonds to it in payment of the subscription. The objection was taken.

that the question of subscribing to stock in, and issuing bonds to, the consolidated company was never submitted to a vote of the people of the township. This court held, that as, at the time of the consolidation, no subscription to stock had been made, and thus no vested right had accrued to the company named in the vote, the extinction of that company worked a revocation in law of the authority to subscribe to stock and to issue bonds. In that case, it appeared by the face of the bonds that the vote of the people was to subscribe to the stock of the Lexington, Chillicothe and Gulf Railroad Company, and that that company and another had been consolidated under the name of the Lexington, Lake and Gulf Railroad Company. This court held, that this recital in the bonds was sufficient to put the holder on inquiry, and that the bonds were invalid. The suit was brought by a holder of coupons attached to the bonds, against the county, to recover the amount of the coupons.

In *County of Scotland* v. *Thomas*, 94 U. S. 682, at October term, 1876, the suit was brought on coupons attached to bonds issued by the county of Scotland, in the State of Missouri, on its own behalf, to the Missouri, Iowa and Nebraska Railway Company, for a subscription on behalf of the county to the stock of that corporation, which was a corporation formed by the consolidation, in March, 1870, (under the above mentioned act of March 2d, 1869,) of the Alexandria and Nebraska City Railroad Company, of Missouri, (formerly the Alexandria and Bloomfield Railroad Company,) with the Iowa Southern Railway Company, of Iowa. It was claimed that the power to subscribe to the stock had been given by the charter granted in 1857 by Missouri to the Alexandria and Bloomfield Railroad Company, before the adoption of the state constitution of 1865, which required that the question of subscribing to stock should be submitted to a vote of the qualified voters of the county. No vote had been taken in the case. It was contended on behalf of the plaintiff, that the consolidated corporation acquired, by the consolidation, all the privileges of the Alexandria and Nebraska City Railroad Company, and, among others, the privilege of receiving county

subscriptions to its capital stock. This court held, that the prohibition of the constitution of 1865 only extended to restraining the legislature from authorizing in the future municipal subscriptions, or aid to private corporations, without a vote of the people of the municipality, but did not take away any authority previously granted to subscribe to stock without a vote of the people. It also held, that the simple consolidation with another company did not extinguish the power of the county to subscribe, or the privilege of the company to receive a subscription. As authority for this view it cited the case of *The State* v. *Greene County*, 54 Missouri, 540.

In the case of *County of Scotland* v. *Thomas*, the power to consolidate was given in 1869, after the original charter of 1857 was granted, and after the Constitution of 1865 went into effect; but it was held that that fact did not affect the power. In its opinion, the court said (p. 691): that the railroad authorized by the charter of 1857 "was 'a railroad from the city of Alexandria, in the county of Clark, in the direction of Bloomfield, in the State of Iowa, to such point on the northern boundary line of the State of Missouri as shall be agreed upon by said company, and a company, authorized on the part of the State of Iowa, to construct a railroad to intersect the road authorized to be constructed by the provisions of this act, at the most practicable point on said state line.' Bloomfield was a small town in Iowa, evidently not intended as the final objective point of the proposed line, which is only required to be ' in the direction of Bloomfield.' A connection with a continuous road in Iowa was the declared object of the road proposed. It was evidently the purpose to bring Alexandria, a port of Missouri on the Mississippi River, in connection with the rich region of southern and western Iowa, by means of the road then being chartered, and a road to connect therewith, running into the State of Iowa. This purpose will be most effectually attained by the construction of the continuous line contemplated by the consolidated companies. The general direction of the road is not changed. It does not pass through Bloomfield, it is true; but it does not pass it by so far as to be a substantial departure from

the route originally indicated. The amending act, therefore, which authorized a consolidation with the Iowa Southern Railway Company, and thereby constituted the Missouri, Iowa and Nebraska Railway Company, was in perfect accord with the general purpose of the original charter of the Alexandria and Bloomfield Railroad Company; and, if the other rights and privileges of the latter company passed over to the consolidated company, we do not see why the privilege in question should not do so, nor why the power given to the county to subscribe to the stock should not continue in force."

The court distinguished the case from that of *Harshman* v. *Bates County*, 92 U. S. 569, on the ground that in that case the subscription to stock was made by the County Court in behalf of a township, and that the County Court was regarded as being the mere agent of the township, and as having no discretion to go beyond the precise terms of the power given to it, to subscribe to the stock of the company named in the vote; while in the case of *Scotland County*, the County Court acted as the representative authority of the county itself, and was officially invested with all the discretion necessary to be exercised under the change of circumstances brought about by the consolidation.

The court further proceeded to say, in the *Scotland County* case (p. 693): "If we look at the subject in a broad and general view, it will be still more manifest that the power in question was intended to exist, notwithstanding the consolidation. The project of the railroad promised a great public improvement, conducive to the interests of Alexandria and the counties through which it would pass. Its construction, however, would greatly depend upon the local aid and encouragement it might receive. The interests of its projectors and of the country it was to traverse were regarded as mutual. The power of the adjacent counties and towns to subscribe to its stock, as a means of securing its construction, was desired not only by the company, but by the inhabitants. Whether the policy was a wise one or not is not now the question. It was in accordance with the public sentiment of that period. The power was sought at the hands of the legislature, and was

given. It was relied on by those who subscribed their private funds to the enterprise. It was involved in the general scheme as an integral part of it, and as much contributory and necessary to its success as the prospective right to take tolls. Why it should not still attach to this portion of the road, as one of the rights and privileges belonging to it, into whose hands soever it comes, by consolidation or otherwise, it is difficult to see."

The conclusion of the court was, that the power of the county of Scotland to subscribe, being a right and privilege of the Alexandria and Nebraska City Railroad Company, passed, with its other rights and privileges, into the new conditions of existence which that company assumed under the consolidation, and this although the company with which the consolidation was effected belonged to the State of Iowa.

In *Town of East Lincoln* v. *Davenport*, 94 U. S. 801, at October term, 1876, which was a suit on coupons attached to bonds issued by a town in Illinois, provision had been made by statute, prior to the time when a subscription was made by that town to the stock of a railroad company, that the company might consolidate with other companies, in order to carry out the object of its charter, and that its franchises, rights, subscriptions, and credits might be transferred, and such consolidation was effected, and a subsequent transfer by the consolidated company was lawfully made to a new company engaged in constructing a connecting road, thus forming a continuous line, the stockholders in the former companies becoming stockholders in the new company. It was held that a delivery by the town to such new company of bonds for the payment of the original subscription, and a receipt of a certificate of stock in the new company, were warranted by law. In the opinion of the court the doctrine of the case of *County of Scotland* v. *Thomas*, 94 U. S. 682, was confirmed, and the distinction drawn in that case between it and the case of *Harshman* v. *Bates County*, 92 U. S. 569, was adverted to.

In *County of Bates* v. *Winters*, 97 U. S. 83, at October term, 1877, the suit was brought to recover the amount of bonds and coupons issued by the county of Bates, in the State

of Missouri, in behalf of Mount Pleasant township, in that county. The bonds were issued in January, 1871, to the Lexington, Lake and Gulf Railroad Company, a corporation formed by the consolidation of the Lexington, Chillicothe and Gulf Railroad Company with another corporation. The township had voted, in April, 1870, in favor of a subscription to the stock of, and the issue of bonds to, the Lexington, Chillicothe and Gulf Railroad Company. No subscription to the stock of that company was shown to have been made, but the subscription was made on the books of the new company formed by the consolidation. This court held, that as, in fact, no subscription had been made to the stock of the Lexington, Chillicothe and Gulf Railroad Company, the bonds were void, under the ruling in *Harshman* v. *Bates County*, because the popular vote gave author ty to subscribe to the stock of one company, while the subscription was made, and the bonds were issued, to a different company; and that the recitals in the bonds were such that there could be no *bonâ fide* holders of them. The bonds recited, on their face, that the vote had been on the proposition to subscribe to the capital stock of the Lexington, Chillicothe and Gulf Railroad Company, and that that company and another company had been consolidated into one company, under the name of the Lexington, Lake and Gulf Railroad Company, to which latter company the bonds were, on their face, issued. This court reversed the judgment below, which had been in favor of the plaintiff, and remanded the case for a new trial.

In *Wilson* v. *Salamanca*, 99 U. S. 499, at October term, 1878, the suit was against the township of Salamanca, in Cherokee County, Kansas; to recover the amount of coupons detached from bonds issued by that township to the Memphis, Carthage and Northwestern Railroad Company. The bonds were issued in September, 1872, in pursuance of an election held in November, 1871, at which it was voted to subscribe to stock in, and issue bonds to, the State Line, Oswego and Southern Kansas Railroad Company. After the vote was had, the latter company was consolidated with another railroad company, into a new corporation, to which the bonds were

issued. The subscription was made to the stock of the new corporation, and no other vote was had than the one above mentioned. The case came up on questions certified, one of which was as follows: "Whether or not it is a defence to this action by a *bonâ fide* holder for value of the interest coupons sued on, without actual notice, that after the order of the board of county commissioners for an election, and after a favorable vote by a three-fifths majority of the qualified electors of Salamanca township, according to law, to subscribe stock in the State Line, Oswego and Southern Kansas Railroad Company, payable in negotiable bonds, to aid in the construction of its railroad, the subscription of stock and the issue of bonds without any further election were made to the Memphis, Carthage and Northwestern Railroad Company, with which said prior company, in whose favor the vote was had, had become merged and consolidated under a law existing at the time of said election, to form a continuous line." The judgment of the Circuit Court was in favor of the township; but this court reversed the judgment, and answered the above question in the negative, on the authority of the case of *County of Scotland* v. *Thomas*, 94 U. S. 682. The court said: " The power of the State Line, Oswego and Southern Kansas Railroad Company to consolidate with other companies existed when the vote for subscription was taken in the township. When the consolidation took place, there was a perfected power in the township to subscribe to the stock of that company, and there was also an existing privilege in the company to receive the subscription. That privilege, as we held in the *Scotland County* case, passed by the consolidation to the consolidated company." The court distinguished the case from that of *Harshman* v. *Bates County*, 92 U. S. 569, on the ground that the township trustee and the township clerk, who made the subscription and issued the bonds in the Salamanca township case, acted in their official capacity as the constituted authorities of the township, and its legal representatives, and not as mere agents, and occupied the position of the County Court in the *Scotland County* case.

In *Menasha* v. *Hazard*, 102 U. S. 81, at October term, 1880,

the suit was against the town of Menasha, in the county of Winnebago and State of Wisconsin, to recover the amount of coupons detached from bonds issued by that town to the Wisconsin Central Railroad Company, in October, 1871. It had been voted by the town, in June, 1870, to issue bonds to the Portage, Winnebago and Superior Railroad Company. After the vote was had, and in November, 1870, the Portage, Winnebago and Superior Railroad Company was consolidated with another company, and its name was changed in February, 1871, to that of the Wisconsin Central Railroad Company, and a further consolidation took place with a company to which the bonds were afterwards issued. It appeared that, before the subscription and bonds were voted, the Portage, Winnebago and Superior Railroad Company was authorized by statute to consolidate with other companies constructing connecting lines, and that the consolidation was effected in pursuance of the statute. This court held that, under these circumstances, the issuing of the bonds to the consolidated company was lawful.

In *Harter* v. *Kernochan*, 103 U. S. 562, at October term, 1880, bonds had been voted by the township of Harter, in Clay County, Illinois, as a donation to the Illinois Southeastern Railway Company, and were issued to the Springfield and Illinois Southeastern Railway Company, the latter company having been formed subsequently to the vote, by a consolidation between the former company and another company. This court held that the statutes of Illinois, existing when the vote was taken, authorized the consolidation, and that, upon such consolidation, the new company succeeded to all the rights, franchises and powers of the constituent companies. The court said, (p. 574:) "The power in the township to make a donation to aid in the construction of the Illinois Southeastern Railway was also a privilege of the latter corporation, and that privilege, upon the consolidation, passed to the new company. The donation was voted before the consolidation took effect, and since the consolidated or new company did not propose to apply such donation to purposes materially different from those for which the people voted it in 1868, its right to

receive the donation, at least when the township assented, cannot be doubted." The validity of the bonds was upheld.

In *New Buffalo* v. *Iron Company*, 105 U. S. 73, at October term, 1881, the suit was brought on bonds and coupons issued by the township of New Buffalo, in the county of Berrien and State of Michigan. The bonds had been voted by the township in May, 1869, as a donation in favor of the Chicago and Michigan Lake-Shore Railroad Company. When the bonds were voted, there was in force a general statute under which any railroad company of the State, forming a continuous or connected line with any other railroad company in or out of the State, could consolidate with the latter. The statute provided that the new corporation should possess all the powers, rights and franchises conferred upon its constituent corporations, and that they should be deemed to be transferred to and vested in it. After the vote was had, the company to which the bonds were voted was consolidated with another company, into a new corporation, having the name of the Chicago and Michigan Lake-Shore Railroad Company. The point was taken, in this court, that the bonds were void because they were delivered to a company to which they were not voted. This court said: "The only remaining objection to the judgment is that the bonds were delivered to the consolidated company, when they were not voted to that company. We concur with the court below in holding that the aid voted must be deemed to have been given in view of the then existing statute, authorizing two or more railroad companies forming a continuous or connected line to consolidate and form one corporation, and investing the consolidated company with the powers, rights, property and franchises of the constituent companies. *Nugent* v. *The Supervisors,* 19 Wall, 241; *County of Scotland* v. *Thomas,* 94 U. S. 682; *Town of East Lincoln* v. *Davenport,* 94 U. S. 801; *Wilson* v. *Salamanca,* 99 U. S. 504; *Empire* v. *Darlington,* 101 U. S. 87; *Menasha* v. *Hazard,* 102 U. S. 81; *Harter* v. *Kernochan,* 103 U. S. 562; *County of Tipton* v. *Locomotive Works,* 103 U. S. 523. The bonds were, therefore, rightfully delivered to the new or consolidated corporation." This court affirmed the judgment against the township.

The new trial which was directed by this court in *County of Bates* v. *Winters*, 97 U. S. 83, took place and resulted in another judgment against Bates County, which was brought before this court in *Bates County* v. *Winters*, 112 U. S. 325, at October term, 1884. The bonds were issued by the County Court on behalf of the township. This court held that, at the second trial, an acceptance by the Lexington, Chillicothe and Gulf Railroad Company, of the subscription to its stock, had been shown, which made the subscription complete and binding as a subscription to the stock prior to the consolidation, the judgment in *County of Bates* v. *Winters*, 97 U. S. 83, having been reversed because it did not appear that the County Court had actually subscribed to the capital stock of the Lexington, Chillicothe and Gulf Railroad Company before the consolidation. This court held, in the case in 112 U. S., that the valid subscription made prior to the consolidation rendered unnecessary a subscription to the stock of the consolidated company, which latter subscription it had held, in *Harshman* v. *Bates County*, 92 U. S. 569, and *County of Bates* v. *Winters*, 97 U. S. 83, to have been invalid. In the case in 112 U. S. this court went on to say : " As the Lexington, Chillicothe and Gulf Company was organized under the general railroad law of Missouri, which authorized consolidations, the subsequent consolidation of that company with another organized under the same law did not avoid the subscription which was made to its stock on the 17th of June, and the bonds in payment of the subscription were properly delivered to the consolidated company. This has been many times decided. *New Buffalo* v. *Iron Company*, 105 U. S. 73, and the cases there cited." This court held the bonds to be valid.

We do not think that the rigid rule laid down in the case of *Harshman* v. *Bates County*, 92 U. S. 569, ought to be applied to the present case, although it is a case of bonds issued by a County Court in the State of Missouri on behalf of a township of the county. In the articles of association of the St. Louis, Chillicothe and Omaha Railroad Company it was declared that the object of the association was to construct, maintain, and operate a railroad for public use, from Chillicothe to such

point on the boundary line between Missouri and Iowa as should be deemed, after actual survey, to be on the most direct and feasible route for constructing, maintaining, and operating a railroad between Chillicothe and Omaha in Nebraska; and, by the same articles, it was provided that the association was organized under and subject to. the laws of the State of Missouri, contained in chapters 62 and 63 of Title XXIV of the General Statutes of Missouri of 1865, possessing all and singular the powers therein contained. The St. Louis, Council Bluffs and Omaha Railroad Company, in Iowa, was formed in September, 1870, to construct a railroad from Council Bluffs, in Iowa, to the state line between Iowa and Missouri, at a point where the Chillicothe and Omaha Railroad should reach such state line, and, in the event of the consolidation of the Iowa corporation with the Chillicothe and Omaha Railroad Company, (which was the new and changed name of the St. Louis, Chillicothe and Omaha Railroad Company,) then, in connection with that company, " to form a continuous line of railroad from the city of Omaha, in the State of Nebraska, and the city of Council Bluffs, in the State of Iowa, to the city of St. Louis, in the State of Missouri." The consolidation thus contemplated took place. The new company was called the St. Louis, Council Bluffs and Omaha Railroad Company, and the bonds were issued to it. They were issued as negotiable securities, to pay for the subscription voted to the stock of the Missouri corporation. The vote was that they should be issued in accordance with the law regulating subscriptions by municipal townships to railroad companies, in payment of a subscription to be made on behalf of the township of Chillicothe. to the stock of the Missouri company. The object of the consolidation was stated in the articles of consolidation to be to consolidate the two companies into one " for the purpose of constructing, owning, maintaining, using, and operating a continuous line of railroad from the city of Omaha, in Nebraska, and the city of Council Bluffs, in Iowa, to the city of Chilli-cothe, in Missouri, under the name of the St. Louis, Council Bluffs and Omaha Railroad Company." The vote of the people to subscribe to the stock, followed by the issue of the

bonds, was an adoption of the articles of association of the Missouri company, not only with the powers and purposes expressed in those articles, and conferred by then existing statutes, but with all powers which had, prior to the vote, been conferred upon it by statute. The intention and purpose of the voters of the township in voting, and of the County Court of the county in issuing, the bonds, were fully carried out in what was done. The vote of the people contemplated and authorized the very thing that was done. The bonds were voted for the express purpose of constructing a road from Chillicothe to the boundary line between Missouri and Iowa, with a view to continuing the road from such boundary line to Omaha, in Nebraska. This object was attained by means of the consolidation. The road was constructed by the consolidated company from Chillicothe to the boundary line between Missouri and Iowa, through the counties of Missouri named in the articles of association of the Missouri company, and was continued thence to Omaha, in Nebraska, and has ever since been operated upon that line. The object expressed in the articles of association of the Missouri company, of having a continuous road from Chillicothe to Omaha, was not only effectually accomplished by the consolidation, but could not have been accomplished without it. The Missouri corporation could not have built the road in Iowa from the state line to Council Bluffs, and a railroad extending only from Chillicothe to the state line would not have answered the purpose contemplated. To say, therefore, that there has been any substantial diversion, in the use of the bonds, from the purpose contemplated by the vote of the people of the township, because of the consolidation and of the issuing of the bonds to the consolidated company, which has made the very road intended, because the authority conferred by the vote was nominally one only to issue the bonds to the Missouri corporation, is not a sound proposition, in view of the fact that the statute of Missouri expressly authorized the consolidation which took place. Under the facts of the case, the provision for consolidation became a part of the contract between the township and the railroad company, and the vote to issue the bonds to

the company was an assent to the exercise by it of all the corporate powers, including that of consolidation, with which it was invested at the time of the vote. So true is this, that, if the Missouri company had never been consolidated with the Iowa company, and the road had only been built to the state line, and no extension of it through Iowa to Council Bluffs and Omaha had been made, it might well have been urged that the citizens of the township had been defrauded, and that the purpose in issuing the bonds had not been carried out.

We think that, in the present case, the rule applied in the cases before cited, of *County of Scotland* v. *Thomas*, 94 U. S. 682; *Town of East Lincoln* v. *Davenport*, 94 U. S. 801; *Wilson* v. *Salamanca*, 99 U. S. 499; *Menasha* v. *Hazard*, 102 U. S. 81; *Harter* v. *Kernochan*, 103 U. S. 562; *New Buffalo* v. *Iron Company*, 105 U. S. 73; and *Bates County* v. *Winters*, 112 U. S. 325, is the more proper and salutary one, and that the doctrine laid down in *Harshman* v. *Bates County*, 92 U. S. 569, and in *County of Bates* v. *Winters*, 97 U. S. 83, that a County Court in Missouri could not, on a vote by a township to issue bonds to a corporation named, issue the bonds to a company formed by the consolidation of that corporation with another corporation, would not be, if applied here, a sound doctrine.

(3) As to the objection that it does not appear by the findings of the Circuit Court that there was any formal order made by the County Court for the issue of the bonds. By § 51 of the statute before cited, it was provided, that if it should appear from the returns of the election that not less than two-thirds of the qualified voters voting at the election were in favor of the subscription to the stock of the railroad company, it should be the duty of the County Court to make the subscription in behalf of the township, according to the terms and conditions thereof, and that, if those conditions provided for the issuing of bonds in payment of such subscription, the County Court should issue such bonds in the name of the county and deliver them to the railroad company. This imposed a plain duty in the present case upon the County Court, because the statute and the vote, taken together, authorized

the subscription and the issue of the bonds, and no formal order by the County Court to do those acts was necessary. The acts were ministerial. The statute left no discretion in the County Court, but made it the duty of the court to make the subscription and issue the bonds. The sole duty of the court was to ascertain that the proper vote had been had. The bonds state on their face that they are "issued under and pursuant to an order of the County Court of Livingston County, authorized by a two-thirds vote of the people of Chillicothe municipal township," and each bond also states that the county has executed it by the presiding justice of the County Court of the county, under an order of the court, signing his name to the bond, and by the clerk of the court, under the order thereof, attesting the same and affixing thereto the seal of the court, and it is so signed and attested and the seal is affixed.

Moreover, the finding of the Circuit Court is, that the records of the County Court show that that court made an order, on the 21st of February, 1877, stating that, under and by virtue of the statute of the State, approved March 23d, 1868, the county of Livingston, for the use and in behalf of the municipal township of Chillicothe, had issued and delivered the bonds in question to the St. Louis, Council Bluffs and Omaha Railroad Company. It is also found as a fact by the Circuit Court, that the county of Livingston had made eleven semi-annual payments of interest on the bonds, from the proceeds of taxes levied in each year on the taxable property of the township.

The County Court having been designated by the statute as the proper authority to determine that the conditions existed which authorized the making of the subscription, to be followed by the issuing of the bonds, the fact of the issue of the bonds by the County Court, under its seal, with the recitals contained in the bonds and the other facts above stated, estop the county from urging, as against a *bonâ fide* holder of the bonds and coupons, the existence of any mere irregularity in the making of the subscription or the issuing of the bonds. On the foregoing facts, it must be presumed that the subscription to the stock was made by the County Court in behalf of

the township, and the county is estopped from asserting the contrary.

We are referred by the counsel for the plaintiff in error to the cases of *The State* v. *Garroutte*, 67 Missouri, 445, and *Weil* v. *Greene County*, 69 Missouri, 281, as holding to the contrary of the views we have here announced. Independently of the fact that these decisions were made in 1878, many years after the bonds in the present case were issued, no such facts existed in those cases as exist in the present case. In the case in 67 Missouri, the bonds were issued to the Hannibal and St. Joseph Railroad Company, to aid in building the Kansas City and Memphis Railroad, alleged to be a branch of the former road. The main line had never been built. The court said that a branch road necessarily presupposed a main trunk line; and that the Kansas City and Memphis Railroad was, for all practical purposes, really a distinct and independent branch of the Hannibal and St. Joseph Railroad, the union existing merely in name but not in substance, and the branch road having separate stock and stockholders, president, directors, and liabilities from the main road, so as to require, under the Constitution of Missouri of 1865, a vote of the people in favor of the issue of the bonds. There was no vote of the people in that case. In the case in 69 Missouri, the bonds had been issued by Greene County to the Hannibal and St. Joseph Railroad Company, to aid in building the road through that county. The case did not show that there was any connection between the Hannibal and St. Joseph Railroad Company and the railroad to be built, nor what railroad it was, nor that Greene County had ever subscribed to the stock of any railroad company.

The exceptions taken on the trial, as above set forth, do not present any question different from those which have been discussed. The bonds and coupons were properly read in evidence, and so were the certified copies of the tax levies.

We find no error in the record, and

*The judgment of the Circuit Court is affirmed.*