## LEO *v.* UNION PAC. RY. CO. and another.

*(Circuit Court, S. D. New York.* January 24, 1884.)

1. DEMURRER—INSUFFICIENCY OF COMPLAINT—CORPORATE POWERS, ETC.
    The bill of the plaintiff, a stockholder in the defendant corporation, brought to restrain the corporation from employing its assets in excess of its corporate powers, *held* insufficient on demurrer on the ground that the allegations and statements should be more specific to show good cause for the relief sought.
2. CORPORATIONS—IN WHAT CASE THE MAJORITY RULES.
    In corporations within the scope of the corporate authority the majority rules; beyond this they have no right to go, and one may insist upon stopping at the limits.
3. SAME.
    Those who become members of a corporation consent to the rule of the majority within the powers of the corporation, but not beyond. As the right to restrain going beyond such powers depends upon the want of consent, if the consent is given the right ceases. Therefore, when such restraint is sought, due diligence, in the proper direction, to prevent what is sought to be restrained, must be shown as a part of the title to relief.

In Equity.

*George Zabriskie* and *John E. Burrill,* for orator.

*John F. Dillon,* for defendants.

WHEELER, J. This cause has been before heard on a motion for a preliminary injunction. 17 FED. REP. 273. It has now been heard on demurrer to the bill. The question then was whether the defendants should be restrained pending the litigation; it now is whether there is anything in the bill which they ought to answer. The bill is brought by a stockholder to restrain the corporation from employing its assets in excess of its corporate powers; the other defendant is joined as president of the corporation for discovery merely, and no bad faith is alleged or charged. The prayer is that the corporation and its officers and agents be restrained, and for further relief. Any relief for the orator here must be wholly preventive. He could not, and does not ask to, undo what has been done. The avails of it, if held by the corporation, can only be reached through dividends common to all stockholders; if by others, only by proceedings against those who have them.

According to the bill, which is now to be taken as true, the corporation is made up of the Union Pacific Railroad Company, the Kansas Pacific Railway Company, and the Denver Pacific Railway & Telegraph Company. The Union Pacific Railroad Company, before the consolidation, having a definite line of road, exceeded its powers if what is now sought to be restrained is an excess, and in the same manner, by lending and advancing moneys to other railroad companies to be used in the construction, maintenance, and operation of their roads, and entered into obligations to furnish further amounts, and received in payment of moneys furnished from time to time stocks and bonds of such roads. Since the consolida-

tion the same course has been pursued; stocks and bonds to which the Union Pacific Railroad Company would have been entitled, have been received by the defendant, and it has lent and advanced its moneys and credit to the same and other organized railroad corporations for the purpose of, and of aiding in, the construction, maintenance, and operation of their roads. There is no description of the corporations so aided, except that the corporate names of some are stated without their source, whether from state or national authority, and some are stated to be unknown; nor of their lines of road except as branch and connecting roads. Nor is there any statement of the amount of such aid or of the payments therefor, except that it is stated as appearing from the report of the government auditor that the amount of stocks and bonds received from other roads was, by the Union Pacific Railroad Company, June 30, 1878, $5,229,327.84; June 30, 1879, $7,534,243.91; by the defendant, June 30, 1880, $15,338,453.94, and that the orator is informed and believes that the defendant now holds of such bonds $23,749,-230.40, and of such stocks $29,462,046.98. The orator has at different times been a stockholder to a large amount in the defendant company. He acquired his present stock, 100 shares, November 17, 1882; commenced to object to this course of the defendant the next day, and brought this suit December 22, 1882. In the amended bill now under consideration, it is alleged that at a general meeting of the stockholders, held March 9, 1883, at which the holders of 384,769 shares were present or represented, this course was unanimously approved of. Whether the orator was present at that meeting is not stated; neither is any effort by him with the stockholders, either separately or at any meeting, to induce them to change or desist from this course, set forth, or any attempt to stop it shown, except notifications and protests to the officers and agents of the company.

The orator could not, and does not claim to, have any right to relief on account of his former ownership of stock. Having parted with that and all rights belonging to it, he gained this as a new acquisition, and has such rights as appertain to him as the owner of it as he acquired it. There is no doubt, and no question is really made, but that a stockholder or partner in an enterprise has the right to prevent taking his interest into another and different enterprise without his consent. In corporations within the scope of the corporate authority the majority rules; beyond this they have no right to go, and one may insist upon stopping at the limits. *Colman* v. *Eastern Cos. Ry. Co.* 10 Beav. 1; *Salomons* v. *Laing,* 12 Beav. 339; *Beman* v. *Rufford,* 4 Eng. Law & Eq. 106; *Stevens* v. *Rutland & B. R. Co.* 29 Vt. 545. This right to stop the majority at the bounds of corporate power rests upon the control which every one has over his own property. Those who become members of a corporation, consent to the rule of the majority within the powers of the corporation, but not beyond. As the right to restrain going beyond depends upon the want of consent, if

the consent is given the right must cease. Therefore, when such restraint is sought, due diligence, in the proper direction, to prevent what is sought to be restrained, must be shown as a part of the title to relief. *Kent* v. *Jackson,* 14 Beav. 367; *Gregory* v. *Patchett,* 33 Beav. 595. The exercise of the rights of a stockholder to influence corporate action by vote and speech in corporate meetings, when opportunity was presented or could be had, would lie in the proper direction. Until such means should be exhausted or prevented, there would be no real oppression of the minority by the majority. *Hawes* v. *Oakland,* 104 U. S. 450. The transactions of which the orator complains, and the continuance of which he is seeking to prevent, have been going on in the Union Pacific Railroad Company since long before, and in the defendant company ever since, the organization of the defendant company. As he had been a stockholder before, and has derived his knowledge of what was being done from the auditor's reports, open to all stockholders at least, he must have known what had been and was being done in these respects when he purchased this stock and assumed his present *status* in the company. He does not allege that he was in anywise ignorant of these things. His vendor is not shown to have in all this time objected, and must be taken to have acquiesced. He purchased this stock knowing that the company was engaged in the enterprises he seeks to stop, and by taking it he consented to become a member of a corporation so engaged. Large outlays had been made, great liabilities had been incurred, and embarrassing complications would necessarily follow, stopping them in the midst. It would seem to be highly inequitable and unjust to allow such a small minority to step in and arbitrarily stop the great majority, acting in good faith, honestly even if mistakenly, and in strictness outside of their authority. If the company was about to undertake a new enterprise not involved with these which have been so long prosecuted, and outside of its corporate powers, such as building a new line of road or purchasing the stock of another line, so as to control it, and thereby extend its lines beyond its charter, the case might be very different.

It does not distinctly appear that the transactions in question are outside of the powers of the corporation. The Kansas Pacific Railway Company was a Kansas corporation, with powers amply sufficient, under the laws of that state, to do within that state all that is complained of as being done somewhere by the defendant. Comp. Laws Kan. § 4091. This corporation was consolidated with the others as it was, and as they were, and it is not easy to see any reason why the corporate powers of each were not carried into the consolidated company. *County of Scotland* v. *Thomas,* 94 U. S. 682. Not that the consolidated company has powers in all the states and territories where it exists co-extensive with those of the Kansas Pacific in Kansas, but it may have in Kansas all the powers which the Kansas Pacific had there. If it has, all these transactions may be, so far as

the bill shows, in that state, and within the powers authorized to be exercised there. The names of the corporations are given, but they are private corporations, although created for public purposes, and judicial notice cannot be taken of their location. Although the defendant is merely a railroad corporation, it must, from its nature and circumstances, have large implied powers, which are as well conferred as its express powers. *Nat. Bank* v. *Graham*, 100 U. S. 699. It is burdened with vast debts, which it was fully authorized to assume, falling due in such immense sums at a time that the ordinary revenues would be wholly inadequate to meet them. Large accumulations and investments must be made long beforehand, involving great financial transactions. Operations must be had wholly foreign to the management of the railroads themselves, and pertaining much more to the business of banking than that of a carrier. These operations, if entered into for the purpose of carrying on a banking business, would be wholly outside of the corporate power; but when done for the purpose of fulfilling the financial duties of the corporation, must be clearly within them. The purchase of the stocks and bonds of other railroads might be for this legitimate purpose as well as the purchase of government or other corporate securities. The orator has not shown that the purchases of stocks and bonds may not be of this proper class.

All these statements and allegations are in very general terms. Excess of chartered powers, in progress or intended, is in no particular pointed out. A decree according to the prayer of the bill would be scarcely, if any, more than a general injunction against going outside of the charters. Something more specific, and so specific that the court can see that it is unwarranted by the law of the existence of the corporation, and wrongful to the orator as a member of it, should be pointed out distinctly. The bill, as now considered, does not appear to be sufficient to require an answer.

The demurrer is sustained, and the bill adjudged insufficient.