# DAVID WILSON ET AL.

*v.*

# CENTRAL ALTAGRACIA, INCORPORATED.

San Juan, Equity, No. 436.

1. The owners of $23,500 of the capital stock of a corporation organized for $200,000, and which has issued $172,000 of the same, who charge the officers of the corporation with mismanagement, incapacity, ignorance, waste, extravagance, failure to account, usurpation of powers not granted to them, exercise of duties not authorized, and other misdoings, and that this mismanagement, if allowed to continue, will cause a total loss to the corporation, being a minority in interest, are not entitled to an accounting or the appointment of a receiver until they have exhausted all means within their reach within the corporation to redress their grievances.
2. Such charges must point out in what manner the wrong is being done, and for this general terms are not sufficient.

Opinion filed March 14, 1907.

*Henry F. Hord, Esq.,* solicitor for plaintiffs.

*N. B. K. Pettingill, Esq.,* solicitor for defendant.

RODEY, Judge, delivered the following opinion:

The jurisdiction in this case is unquestioned, both on the ground of diverse citizenship and as to the amount involved. The issue to be decided at the present time is an application

of the complainants for the appointment of a receiver, which is strongly opposed by the respondent. The parties have been fully heard pro and con orally, and the authorities, with a memorandum thereof, have been submitted to the court in support of the respective contentions.

The complainant, joined by one Salvador Castelló, is the holder of $23,500 worth, par value, of the capital stock of the respondent corporation. The whole capital stock is $200,000, and $172,000 of it is outstanding in the hands of different individuals, and some $30,000 worth of it is pledged as collateral security for a loan to somebody whose name was not disclosed at the hearing.

The situation of the parties is peculiar. The respondent corporation was organized under the laws of the state of Maine about a year and a half ago, for the purpose of conducting a sugar central or cane-grinding and sugar-manufacturing plant near Mayaguez in the western part of the island of Porto Rico. The foundation of the concern is its own capital stock and a claimed lease or right to use this plant and the 22 cuerdas of land on which it stands, known as the "Central Altagracia," under conditions prescribed in the alleged lease, for a period of twenty years.

The concern cultivates practically no cane of its own, but is a custom mill or sugar factory for the grinding of the cane of the surrounding planters. The plant and the piece of land on which it is situated belong to one Joaquin Sanchez de Larragoiti, who lives in Paris and has recently, as it is said, gone insane, and is represented here in an intervening petition by his guardian. The complainant Castelló secured a ten-year lease of this plant and its land under certain conditions then satisfactory to the owner, and shortly thereafter was joined by

Wilson v. Central Altagracia.

one N. B. K. Pettingill and one Frederick L. Cornwell in the matter. After getting the lease extended for an additional ten years, these new aids of his organized this corporation, as stated, and the lease was transferred to it and the stock put upon the market.

The complainant David Wilson bought $23,000 worth of the capital stock of the concern; the complainant Salvador Castelló became vested, on account, it seems, of his primary ownership of the lease, with $8,000 worth, but, it appears, has disposed of all of it except $500 worth, which is his present interest. It does not appear what amount of the capital stock the said Pettingill is vested with, or what amount of money he has put into the concern, but it is charged in an amendment to the bill of complaint that the said Cornwell put no money at all into the enterprise, but has procured to be issued to himself, $21,000 of the capital stock, for which he paid no value, and is now, through himself or his assigns, pretending to own and hold the same for value.

The said Cornwell is president and the said Pettingill, treasurer, of the concern, and they, together with Frank M. Hamilton, E. B. Commons, and the complainant David Wilson, formed the board of directors at the time of the filing of the bill, and are so still, save that it was intimated on the hearing that Wilson had since resigned. It is to be gathered from the bill that the said Cornwell was given by the board of directors, probably over the vote and protest of Wilson, the management of the plant, and has conducted it in a manner that does not meet the approval of the complainant Wilson. At any rate, the latter soon became very much dissatisfied and finally brought his bill in this court, alleging mismanagement and incapacity of the said Cornwell in and about the premises, waste

of money, extravagance and other misdoings, and praying for discovery, an injunction against the alleged wrongful acts, and the appointment of a receiver. The bill was filed on December 24, 1906, but the application for the receiver was not really pressed until a few days since.

The bill alleges that the said Cornwell was duly elected by the directors as president and given certain specified powers under the articles of association and the by-laws, and that he entered into the management of the concern thereunder, and has continued to be such president and sole and exclusive manager of the business thereof, although the aforesaid Pettingill appears to be treasurer. That Cornwell, up to the time of so taking charge of the said plant, was totally ignorant of the cultivation and grinding of sugar cane, etc., and still continues to be largely ignorant of such processes, but that, notwithstanding this, and pretending to act under the powers conferred on him by the charter and by-laws, but in reality exceeding the same, and usurping powers and duties not authorized, has attempted to manage, and is managing, the manufacture of sugar and molasses and the marketing of the same from said plant, according to his own erroneous and incorrect ideas, and that the concern has suffered grievous loss, amounting to many thousands of dollars, solely chargeable to Cornwell's incapacity in that behalf. That notwithstanding this mismanagement, durin the season of 1905, 1906, a large profit was made, amounting to many thousands of dollars, and that said Cornwell, pretending to act under authority of resolutions of the directors, but in reality without the same, spent said profits for inappropriate machinery, claiming the same to be necessary for the future operations of the plant, but which, according to complainant, is not the best machinery which should have been

procured, etc., and that said Cornwell made such purchase in the arbitrary exercise of powers not properly belonging to him and because of his ignorance as to the proper kind that ought to be procured, and that $50,000 have been expended in this manner; and that the said Cornwell gives no proper accounting of his doings in that behalf. That he has discharged the principal employees of the concern, who were, in the opinion of complainant, the only competent people to run the same, and has employed others to carry out his own preconceived erroneous ideas of the management of a sugar estate. That complainant and the other shareholders are entitled to have periodical statements from the said Cornwell. And that the directors have wholly failed, since the organization of the corporation, to account to the shareholders for the receipts and disbursements, etc., although often requested so to do. That Cornwell has spent considerable money making trips with reference to said machinery, business, etc., and that he is continuing to mismanage the estate, and that if the board of directors and the said Cornwell are permitted to continue in such mismanagement, it may be a total loss. Complainant further alleges that this mismanagement is causing the surrounding planters of cane to lose confidence in the concern through fear that they may not get their pay for the cane they deliver, and, by an amendment to the bill, made on the day of the hearing, alleges that the concern is insolvent.

Moved thereunto apparently by this condition of things, on the 28th of February, 1907, the real owner of the fee and reversion of this plant filed a petition of intervention in the premises, setting up, in substance, that this contention between the parties was injuring and liable to injure and ruin his property, and asserting that his contract was made with the com-

II. Porto Rico.—28.

plainant Castelló without leave to him to transfer it to anybody, and he therefore asks relief against both sides of this controversy and to have the lease canceled and his plant and property restored to him. His counsel took no active part in the hearing for the appointment of a receiver, but intimated that he waived none of his rights and might yet join in such an application or make one in his own behalf, unless he should be secured in some way by a proper bond against loss in the premises.

The bill, as originally filed, contained nothing in that behalf, but, by an amendment, made at the time of the argument on this application a few days since, an allegation was added asserting the insolvency of the respondent corporation.

We have looked into the question somewhat and we find the law to be, as laid down by the text writers and set forth in the decisions of the courts, that, in the absence of statutes directing them, courts have very little to do with the ordinary business and disputes of corporations. Mr. High, in his work on Receivers, 2d ed. § 288, sets forth that—

"It is to be observed, at the outset, that the general jurisdiction of equity over corporate bodies does not extend to the power of dissolving the corporation, or of winding up its affairs and sequestrating the corporate property and effects, in the absence of express statutory authority. And courts of equity will not, ordinarily, by virtue of their general equitable jurisdiction, or of their visitatorial powers over corporate bodies, sequestrate the effects of the corporation, or take the management of its affairs from the hands of its own officers and intrust it to the control of a receiver of the court, upon the application either of creditors or shareholders. And while equity may properly compel officers of corporations to account for any

Wilson v. Central Altagracia.

breach of trust in their official capacity, yet, in the absence of statutes extending its jurisdiction, it will usually decline to assume control over the management of the affairs of a corporation, upon a bill filed by a stockholder, alleging fraud, mismanagement, and collusion on the part of the corporate authorities, since such interference would necessarily result in the dissolution of the corporation, and the court would thus accomplish indirectly what it has no power to do directly. The remedial power exercised by courts of equity, in such cases, ordinarily extends no further than the granting of an injunction against any special misconduct on the part of the corporate officers, and although the facts shown may be sufficient foundation for such an injunction, the court will not enlarge its jurisdiction by taking the affairs of the corporation out of the management of its own officers, and placing them in the hands of a receiver."

The text writer cites a large number of authorities to sustain the views set forth in the above-quoted section, and, in § 292 of the same work, he further states: "It has already been shown that courts of equity proceed with extreme caution in the appointment of receivers over corporate bodies, under legislative enactments enlarging their general jurisdiction for this purpose. And in proceedings under such statutes, mere general allegations in the affidavits in support of the motion for a receiver, as to the belief of affiants that great frauds have been committed, are not sufficient ground for the interference, when it is not stated in what the frauds consist, or by whom they were committed."

So, therefore, it can be seen that courts are very cautious about interfering in such matters, even when they have been given direct legislative authority for such purpose, which is not the case here, as this court in that behalf possesses only its

inherent equity jurisdiction to prevent wrongs and correct frauds in proper cases. Mr. Cook, in his work on Corporations, vol. 2, 4th ed., § 746, states that—

"The law is well settled that the courts have no power to remove corporate officers. Nor can the stockholders, in meeting assembled, remove the officers. It is also well established that a court of equity will not practically remove corporate officers by enjoining them from performing any of their customary duties, and by appointing a receiver to manage the corporate affairs.

"The appointment of a receiver as a remedy for the frauds or *ultra vires* acts of the directors is a punishment of the innocent and complaining party for the acts of the guilty party. As was well said by an Illinois court: 'In principle this is very much like sending the creditor to jail because his debtor cannot pay him; and is so opposed to that spirit of justice which pervades all the true doctrines of equity jurisprudence that it will not bear discussion.' "

Mr. Cook proceeds further to show that it is, of course, conceded, that a court of equity has power to appoint a receiver where there is such fraud or dissension as makes it impossible for the corporation to carry on its business honestly and to the advantage of its stockholders, but that such receivership should be granted rarely, and should even then be limited in time and extent, so far as is consistent with its purpose.

In vol. 23 of the Am. & Eng. Enc. of Law, 2d ed. p. 1023, it is stated that: "The subject of the appointment of a receiver for a corporation on the ground of misconduct of officers or directors has given rise to much apparent conflict in the cases. But, however much the decisions seem to differ on the particular facts, the rule generally recognized is that a corporation will

Wilson v. Central Altagracia.

be placed in the hands of a receiver for the misconduct of its officers or directors only when necessary to preserve the property or rights of creditors or stockholders. The mere misconduct of officers of a corporation is not sufficient ground for the appointment of a receiver, as a court of equity may forbid the misconduct or remove the officer from his position."

In the case of Leo v. Union P. R. Co. 22 Blatchf. 22, 19 Fed. 283, it is clearly set forth that in corporations, within the scope of the corporate authority, the majority rules, and that those who become members of a corporation consent to the rule of the majority within the powers of the corporation. It is also stated that when any stockholder seeks to restrain any of the doings of the corporation, he must show due diligence on his own part in the proper direction within the corporation, to prevent what he seeks to restrain.

In the case of Griffing v. A. A. Griffing Iron Co. 96 Fed. 577, it was held that the fears of a complainant stockholder that the corporation itself would not diligently prosecute a suit against one of its own officers, owing to the relation of the parties, would not warrant the appointment of a receiver to take charge of such suit without a clear showing of laches on the part of the corporation in that behalf.

The Supreme Court of the United States, the decisions of which, of course, are binding here, has had occasion to construe the matter of the application of one or more stockholders for receivers of corporations, etc. In the case of Dimpfell v. Ohio & M. R. Co. 110 U. S. 209, 28 L. ed. 121, 3 Sup. Ct. Rep. 573, it was held that: "In order to give a standing in a court of equity to a small minority of stockholders contesting, as *ultra vires,* an act of the directors against which a large majority makes no objection, it must appear that they have exhausted all

the means within their reach to obtain redress of their grievances within the corporation itself, and that they were stockholders at the time of the transactions complained of, or that the shares have devolved on them since by operation of law."

And Mr. Justice Field, delivering the opinion of the court in that case, further states: "Grievances, real and substantial, must exist, and before an individual stockholder can be heard, he must show, in the language of this court, that 'he has exhausted all the means within his reach to obtain, within the corporation itself, the redress of his grievances or action in conformity to his wishes.' "

One of the most recent cases in that court is that of Corbus v. Alaska Treadwell Gold Min. Co. 187 U. S. 455, 47 L. ed. 256, 23 Sup. Ct. Rep. 157, decided in 1902. In that case, Mr. Justice Brewer, delivering the opinion of the court, goes into a considerable review of the decisions and law upon this subject, and points out the class of cases in which such an action will lie, and states: "But, in addition to the existence of grievances which call for this kind of relief, it is equally important that before the shareholder is permitted, in his own name, to institute and conduct a litigation which usually belongs to the corporation, he should show, to the satisfaction of the court, that he has exhausted all the means within his reach to obtain, within the corporation itself, the redress of his grievances, or action in conformity to his wishes. He must make an earnest, not a simulated, effort, with the managing body of the corporation, to induce remedial action on their part, and this must be made apparent to the court. If time permits or has permitted, he must show, if he fails with the directors, that he has made an honest effort to obtain action by the stockholders as a body, in the matter of which he complains. And he must

Wilson v. Central Altagracia.

show a case, if this is not done, where it could not be done, or it was not reasonable to require it."

It would appear that the frequency with which individual stockholders attack corporations induced the Supreme Court of the United States to change one of its rules, so as to make it necessary for a stockholder, before being permitted to proceed, to make a showing as set out in the rule as thus amended, and even then the opinion proceeds to say: "This court will examine the bill in its entirety, and determine whether, under all the circumstances, the plaintiff has made such a showing of wrong on the part of the corporation or its officers and injury to himself as will justify the suit. The directors represent all the stockholders, and are presumed to act honestly and according to their best judgment for the interests of all. Their judgment as to any matter lawfully confided to their discretion may not lightly by challenged by any stockholder, or, at his instance, submitted for review to a court of equity. . . . And a court of equity may not be called upon, at the appeal of any single stockholder, to compel the directors or the corporation to enforce every right which it may possess, irrespective of other considerations. It is not a trifling thing for a stockholder to attempt to coerce the directors of a corporation to an act which their judgment does not approve, or to substitute his judgment for theirs."

It appears here that complainants hold but a small minority of the capital stock of the respondent corporation, and from a careful reading of the bill we find it almost impossible to draw any other inference from it than that the suit is the result of complainants' inability to control the board of directors or the management of the corporation and substitute their own judg-

ment in that behalf.   This, of course, is never a ground for the interference of a court.

The charge that the surrounding cane growers are losing confidence in the concern has less weight when one considers that one of the first apparent effects of a suit such as this is, would be to bring that condition of affairs about.   In fact, the intervention in the suit by the real owner of the property tends to the inference that complainants themselves are probably the cause of more injury to this corporation than they allege in the way of wrongdoing against it, because the intervening petition is apparently based and worded upon their bill.

It may not be out of place for the court to intimate here, as it did during the oral argument, that it is not impressed with the showing of wrongdoing made in this bill; and, while it could undoubtedly better judge as to the real facts if the respondent corporation, in opposition to this application for a receiver, had seen fit to come in with a sworn answer, setting up the real facts, still we can see that complainant Wilson, who is probably the prime mover in this bill and application, is not the only person who has rights which must be protected, and that courts do not look with favor upon actions, however justified their mover may believe them to be, when they can only result in financial ruin to others having perhaps greater interests in the matter in controversy.

If wrongs exist and the board of directors of this corporation fails to correct them this court can, and will, do so if they prove to be of a kind that demands correction, whenever a proper bill is filed in that behalf, showing such refusal; but it is not necessary that the entire management of a corporation should be taken away from it and the rights of others jeopard-

ized by the appointment of a receiver in order to accomplish this.

Counsel for the respondent corporation, during the oral argument, laid considerable stress upon the general character of the allegations of the bill and its failure to point out in what manner wrong was being done, save in such general terms as not to bring it within the rule laid down by the Supreme Court of the United States. After careful consideration, we feel constrained to agree with this contention, in the light of the authorities above quoted and of others which the court has examined.

The court is not satisfied from the bill or the arguments made at the hearing, that great wrong is being done by the directors or officers of this corporation, or that, in truth and in fact, the substance thereof is being wasted, but, on the contrary, is inclined to believe that the trouble has arisen largely from incompatibility between complainant Wilson and some of the directors or officers of the concern, and that the enterprise, though having difficulties to surmount, is a promising one for profit in the future, and we venture the hope that the expression of these views may induce all parties concerned to so act that, through mutual forbearance, good may result, litigation cease, and the intervening petitioner be induced to withdraw his complaint, so that the enterprise may proceed as intended, to the advantage of all concerned.

Therefore the application for a receiver will be denied, and, unless the bill is, within ten days, amended so as to bring it within the rule laid down by the Supreme Court; supra, it will stand dismissed as to the respondent corporation, but this holding will in no manner affect the rights of the intervening petitioner, to which both complainants and respondent will have to plead or answer within the proper time.